[Civ. No. 3724. Second Appellate District, Division One.—November 4, 1921.]

EDWARD TODD, Respondent, v. HORACE T. LYON et al., Copartners, etc., Appellants.

[1] SALES — IDENTIFICATION OF GOODS — PRICE DEPENDENT UPON INVOICING—PASSING OF TITLE.—Where a contract for a sale of goods identifies the existing goods sold and the price to be paid depends upon some unit of measurement or invoicing thereafter to be made, such fact in itself does not affect the transfer of the title.

[2] ID.—PRESENT TRANSFER OF TITLE—INTENTION OF PARTIES—NATURE OF QUESTION.—The question whether the parties to a contract for the sale of goods agreed upon a present transfer of the title must be ascertained from the intention of the parties at the time of execution, and where such intention clearly appears from a written contract, it is a question of law, and if not clear, it is a question for the jury or trial judge to determine from all the facts and circumstances.

[3] ID.—ACTION FOR GOODS SOLD—DESTRUCTION PRIOR TO INVOICING—DELIVERY—APPEAL—FINDING CONCLUSIVE.—On an appeal from the judgment in an action for the purchase price of a stock of merchandise which was destroyed by fire after the execution of the written agreement, which imported an absolute sale, and prior to the invoicing of the goods for the purpose of fixing the price, the finding that the stock was delivered with the intention to pass

title must be deemed conclusive, where reached upon evidence of a substantial character.

[4] Id. — Ascertainment of Cost of Goods — Evidence — Books of Original Entry.—Where a written agreement for the sale of a stock of goods contemplated the ascertainment of the cost by an invoice thereof, in the taking of which both parties should participate, and the purchasers obligated themselves to pay a certain percentage of such ascertained cost, there was no error in an action for the price, where the goods were destroyed before invoicing but after delivery, to permit the seller to establish such cost by his books of original entry and oral testimony in connection therewith.

APPEAL from a judgment of the Superior Court of San Diego County. E. A. Luce, Judge. Affirmed.

The facts are stated in the opinion of the court.

Wright & McKee and L. N. Turrentine for Appellants.

Charles C. Crouch for Respondent.

SHAW, J.—From a judgment entered in favor of plaintiff, for the purchase price of a stock of merchandise alleged to have been sold and delivered to defendants, they have appealed.

It appears that plaintiff was a merchant at La Mesa, California, where, in a storeroom owned by him, he carried a stock of goods necessary in conducting the business; that on November 1, 1919, he and defendants entered into a written agreement as follows:

"This agreement entered into between the Escondido Mer. Co. hereafter known as the parties of the first part, & E. Todd, hereafter known as the parties of the second part.

"The parties of the second part does by this agreement sell to the party of the first part their entire stock of merchandise located in La Mesa at 85 ct. on the dollar, the goods to be invoiced at what they cost the party of the second part.

"The party of the first part has deposited with the party of the second part $250.00 on the purchase price of the goods.

                            "Edward Todd.

                            "Escondido Mer. Co."

On November 6th, five days after the execution of the contract and prior to the invoicing of the goods, the entire stock of merchandise was destroyed by fire.

The complaint alleges the making of the contract, which is admitted, and the delivery of the stock of merchandise referred to in said agreement to the defendants, the value thereof and a demand for payment made upon defendants, which was refused. In their answer defendants denied that the stock of merchandise had ever at any time been inventoried or invoiced as provided by the terms of the contract, or that any delivery thereof was ever made to them, or that the title thereto ever at any time passed from plaintiff to defendants.

The court found that on the date of the execution of the contract plaintiff delivered the stock of merchandise referred to in the agreement to the defendants, and that at the time "both parties to said contract intended to and did transfer the title and possession thereof to the defendants," which finding is attacked by appellants upon the ground that the evidence is insufficient to support the same.

The court also found that the actual cost to plaintiff of said stock of merchandise was the sum of $8,799.53, which finding appellants attack upon the ground that it is predicated upon testimony in support thereof which the court erroneously admitted over defendants' objection.

Basing their contention upon conceded authorities of other states which hold that where anything remains to be done for the purpose of ascertaining the price, as by weighing, measuring, or invoicing the goods, the performance of such things so to be done shall be deemed a condition precedent, even though identified and in condition for acceptance, to the transfer of title, appellants insist there could be no passing of title in the instant case because the goods were never invoiced as provided by the contract "at what they cost plaintiff." This rule, however, is modified by section 1140 of the Civil Code, which provides: "The title to personal property sold, . . . passes to the buyer whenever the parties agree upon a present transfer, and the thing itself is identified, whether it is separated from other things or not." In construing this section of the code the supreme court, in *Blackwood* v. *Cutting Packing Co.,* 76 Cal. 212

[9 Am. St. Rep. 199, 18 Pac. 248], while recognizing the rule stated as being supported generally by American cases, said that "if the goods are identified, it does not matter that weighing or measuring is necessary to ascertain the price or the quantity." In *Lassing* v. *James,* 107 Cal. 348 [40 Pac. 534], in a case where a certain amount of hay contracted to be sold was never measured and the amount ascertained as provided in the contract, the court, in response to the claim that title did not pass because of such failure to measure, said: "We are clear that the agreement to ascertain the number of tons of hay at some future time by weight and measurement in no way affected the question as to the present passing of the title." In *Fiddyment* v. *Johnson et al.,* 18 Cal. App. 342 [123 Pac. 343], it is said: "If the goods are identified and the parties agree upon a present transfer, it does not matter that weighing and measuring is necessary to ascertain the price to be finally paid." To like effect are the cases of *Browning* v. *McNear,* 145 Cal. 272 [78 Pac. 722]; *Gianelli et al.* v. *Globe Grain & M. Co.,* 48 Cal. App. 103 [191 Pac. 720]; *Greenbaum* v. *Martinez,* 86 Cal. 459 [25 Pac. 12]; *Bill* v. *Fuller,* 146 Cal. 50 [79 Pac. 592].

[1] It thus appears from the authorities cited that where the contract identifies the existing goods sold and the price to be paid depends upon some unit of measurement or invoicing thereafter to be made, such fact in itself does not affect the transfer of the title. There is no question in the instant case as to the identity of the stock of goods sold. They are sufficiently described as being the entire stock of merchandise located in the store of plaintiff at La Mesa, which is a city or town in San Diego County, California. As against the cases cited in support of the rule announced, appellants direct our attention to the case of *Young* v. *New Pedrara Onyx Co.,* 48 Cal. App. 1 [192 Pac. 55, 61], where the court (division two of this district), in discussing a similar question, quoted with approval the rule announced by the supreme court of the United States in the *Elgee Cotton Cases,* 22 Wall. (U. S.) 180 [22 L. Ed. 863], to the effect that "where the buyer is by the contract bound to do anything as a condition, either precedent or concurrent, on which the passing of the property depends, the property will not pass until the condition be ful-

filled, even though the goods may have been actually delivered into the possession of the buyer.'' There is nothing inconsistent between the rule so stated and the rule prevailing in California, since by virtue of section 1140 of the Civil Code the passing of the title did not depend upon the taking of the invoice.

[2] Since, as we hold, the goods were sufficiently identified and the taking of the invoice was not necessary to the transfer of title, the question presented to the trial court for solution was whether or not the parties agreed upon a present transfer of the title, which fact must be ascertained from the intention of the parties at the time. Where such intention clearly appears from a written contract, it is a question of law; if not clear, it is a question for the jury or trial judge to determine from all the facts and circumstances touching the question. (*Fiddyment* v. *Johnson, supra.*)

[3] As stated, the court found the goods were by plaintiff delivered to the defendants with the intent of both parties that title thereto should vest in defendants. Conceding the existence of facts and circumstances from which conflicting inferences might be drawn, there is, in our opinion, evidence which clearly tends to establish the finding as made by the court. The contract cannot be construed as an agreement to sell, for it in express terms declares that plaintiff ''does by this agreement sell'' to defendants ''their entire stock of merchandise,'' etc. The language employed in the writing imports an absolute sale of the property, which is fully identified as being ''their entire stock of merchandise located in La Mesa.'' (*Gianelli & Barmann* v. *Globe Grain & M. Co.*, 48 Cal. App. 103 [191 Pac. 720].) Upon its execution defendants demanded the keys of the storeroom wherein the goods were located, and in accordance with such demand plaintiff delivered two keys to the door, and thereafter, awaiting the taking of the invoice of the goods, which was to determine the amount to be paid therefor, he ceased conducting the business and exercised no right or control over the same. As against these facts, it appears that at the time of the fire plaintiff held an insurance policy upon the property, insuring it against loss by fire, and that he attempted to collect the same upon the theory that the title to the goods was vested in him at the

time they were destroyed; that while he testified that it was his intention when he signed the contract to deliver the goods to defendants as absolute owners in control thereof, he also stated that he expected payment therefor before the goods were removed; that after surrendering the two keys, which he thought were all he had to the door of the storeroom, his wife discovered a third key which he did not send to defendants; to which may be added the facts that the parties were strangers at the time the agreement was made, and that plaintiff posted upon the door a notice reading, ''Closed for Inventory.'' The most that can be said is that inferences might have been drawn from these circumstances which were in conflict with evidence upon which the court, well within its province, made the finding that the stock of merchandise was delivered to defendants with the intention to transfer the title. Such conclusion, since reached upon evidence of a substantial character, must be deemed conclusive upon the question.

[4] The contract contemplated the ascertainment of the cost of the goods by an invoice thereof, in the taking of which both parties should participate, and defendants obligated themselves to pay eighty-five per cent of the total cost of the goods so ascertained. Since it was impossible to obtain such invoice of the goods, plaintiff was permitted to establish the cost thereof from his books of original entry and oral testimony in connection therewith. As shown by his books, the cost of the goods in stock on January 1, 1919, was $7,913.45. Between that date and November 1, 1919, the date of the sale to defendants, he purchased goods at a cost of $6,386.85, and during the same period sold goods at a price aggregating $7,426.05, the cost of which goods so sold and disposed of he testified was $5,500.77. Deducting this last sum from the cost of the goods in stock on January 1, 1919, which added to purchases thereafter made aggregated a total of $14,300.30, left a balance of $8,799.53, constituting the total cost of the stock of goods sold to defendants, eighty-five per cent of which is $7,469.60, for which judgment was rendered. Plaintiff's books from which these facts appeared and his oral testimony in connection therewith were admitted over the objection of defendants, who strenuously insist that the court erred in the ruling. While this was not the method

agreed upon for ascertaining the cost of the stock, and conceding that to some degree it is unsatisfactory, nevertheless the failure to invoice the goods was not due to any fault of plaintiff, ·and it was, under the circumstances of the case, the best—indeed the only—evidence that could be produced touching the issue as to the cost of the property. There was no error on the part of the court in overruling defendants' objection to the admission of the evidence, and since, though to some degree unsatisfactory, it clearly tended to establish the cost of the goods, title to which was vested in defendants, it must on review thereof be deemed sufficient to support the finding that the cost of the stock of merchandise was the sum of $8,799.53.

The judgment is affirmed.

Conrey, P. J., and James, J., concurred.