[Civ. No. 3574.   Second Appellate District, Division Two.—January 17, 1922.]

## ROSENBERG BROS. & CO. (a Corporation), Appellant, v. GEORGE F. BEALES et al., etc., Respondents.

[1] SALE—DRIED APRICOTS—CONTRACT WITH OPERATORS OF DRYING PLANT—EXECUTORY AGREEMENT—ABSENCE OF WARRANTY.—A contract relating to the sale of dried apricots executed by the operators of a drying plant, who were not growers of fruit, which was prepared by the buyers by filling in the spaces in a printed blank form of contract adapted for use in buying fruit from growers, and which provided for the sale of "all of the crop of fruit of the character hereinafter specified, grown or to be grown during the current year on the place known as Beales & Kimball dryer in Los Angeles County, California, about one mile from Van Nuys," and that the estimated quantity of fruit sold was seventy-five to one hundred tons, was not an agreement to sell between seventy-five and one hundred tons of dried apricots, and the estimation of the amount was not a warranty, but it was an agreement to sell the entire output of the dryer during the year whatever such output might prove to be.

[2] ID.—SALE—AGREEMENT OF SALE—PASSING OF TITLE.—The fundamental difference between a sale, properly so called, and an agreement to sell, is that in the former the title passes when the contract is made while in the latter it does not pass until later.

[3] ID.—SUBJECT MATTER OF EXECUTED SALE.—There can be no valid executed sale unless the thing sold actually exists and is in the possession of or under the control of the seller, or is to come out of something that is in the seller's possession or under his control.

APPEAL from a judgment of the Superior Court of Los Angeles County.   J. P. Wood, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Albert D. Pearce and Evans & Pearce for Appellant.

Wilbur Bassett for Respondents.

FINLAYSON, P. J.—This is an action for the alleged breach of a written contract made by defendants with plaintiff's assignors, whereby the former agreed to dry certain apricots and to sell and deliver to plaintiff's assignors the

dried fruit.  Judgment passed for defendants and plaintiff appeals.

The contract, executed on April 7, 1919, was prepared by plaintiff's assignors, whom we shall designate as the "buyers." It seems to have been made by filling in the spaces in a printed blank form of contract adapted for use in buying fruit from fruit-growers, although defendants, the sellers, were not growers of fruit but operated a drying plant, the successful operation of which depended upon their ability to purchase the necessary green fruit from growers in the vicinity.  In so far as it is material to our inquiry, the contract reads as follows: "Beales & Kimball Fruit Co., seller, whose P. O. address is Van Nuys, hereby sells, and Rosenberg Bros. & Co., the buyer, hereby buys all of the crop of fruit of the character hereinafter specified, *grown or to be grown* during the current year on the place known as Beales & Kimball dryer in Los Angeles County, California, about one mile from Van Nuys.  The quantity (estimated by the seller), the variety of fruit sold, and the price to be paid therefor, cured and delivered in accordance herewith, are as follows:

| Quantity (Tons) | Variety | Price per Lb. in Cents |
|---|---|---|
| 75 to 100 Estimate | Dried Apricots 1919 crop— | 16.¾ |

Buyer furnishing sacks

The seller agrees that he will properly dry and cure and deliver the whole of the crop above mentioned of the varieties herein specified. . . . The seller guarantees that he is the sole owner of the fruit sold, free of all encumbrances, and agrees to deliver the same to the buyer free of all encumbrances, f. o. b. cars at Van Nuys, California, not later than the 1st day of Sept., 1919, which time may be extended with buyer's consent, but not otherwise."  The words that we have italicized, "grown or to be grown," were found by the court to have been inserted in the written contract by mutual mistake, and the decree, therefore, reforms the contract by striking them from the writing.

Owing to unforeseen conditions, defendants were able to procure from the growers in the vicinity of their plant not more than about 20 tons of apricots.  These, when dried, made 6,529 pounds, all of which defendants delivered to the

buyers. Plaintiff, to whom the buyers had transferred all of their rights under the contract, brought this action to recover damages arising from defendants' failure to deliver the difference between the 6,529 pounds and the lowest estimated amount named in the contract, to wit, 75 tons.

[1] The construction of the agreement is admitted to be the essential matter in controversy. Appellant contends, and its complaint alleges, that plaintiff's assignors agreed to purchase, and respondents agreed to sell, 75 to 100 tons of dried apricots. Respondents, on the other hand, contend that the contract was correctly construed by the trial court as an agreement on their part to sell and deliver to plaintiff's assignors all of the output of their dryer, whatever that might prove to be, and no more. We think it clear that the learned judge of the trial court placed upon the contract the true construction. Omitting from the writing the words "grown or to be grown," which the trial court found were inserted by mistake, the contract is one whereby defendants, as sellers, agreed to sell, and plaintiff's assignors agreed to buy, "all of the crop of fruit . . . during the current year, on the place known as Beales & Kimball dryer. The quantity (estimated by the seller) . . . cured and delivered . . . [is] as follows: Quantity (tons) 75 to 100. Estimate." It is conceded that defendants are not growers of fruit. The word "crop," in the reference to fruit "on the place known as Beales & Kimball dryer," is, therefore, palpably an incorrect designation. It doubtless crept into the writing because the parties employed a form of contract adapted for use in buying fruit from growers. From all the circumstances, it is obvious that the word "crop" was used to signify the "output" of defendants' plant.

Although the contract was in the form of a present sale, it was an executory agreement to sell. [2] The fundamental difference between a sale, properly so called, and an agreement to sell, is that in the former the title passes when the contract is made, while in the latter it does not pass until later. Here the defendants had no property in the green fruit at the time when they made their contract with plaintiff's assignors. They were relying upon being able to purchase from growers the requisite amount of green fruit that they were to dry and deliver to the buyers. But the sub-

ject of an executed contract of sale must be property the title to which can be immediately transferred from the seller to the buyer. (Civ. Code, sec. 1722.) [3] This being so, all the authorities concur in laying down the rule that there can be no valid executed sale unless the thing sold actually exists and is in the possession of or under the control of the seller, or is to come out of something that is in the seller's possession or under his control, as, for instance, crops grown on his own land, the increase of his own cattle, and the like. (*North Idaho Grain Co.* v. *Callison,* 83 Wash. 212 [145 Pac. 232].) "The seller must have a present interest in the property, of which the thing sold is the product, growth or increase. Having such interest, the right to the thing sold, when it shall come into existence, is a present vested right, and the sale of it is valid. Thus a man may sell the wool to grow upon his own sheep, but not upon the sheep of another; or the crops to grow upon his own land, *but not upon land in which he has no interest.*" (Italics ours.) (*Low* v. *Pew,* 108 Mass. 347 [11 Am. Rep. 357].)

The contract to be construed in this case is, therefore, an executory agreement to sell and deliver to the buyer all of the output of defendants' dryer during the year 1919, estimated to be between 75 and 100 tons, the apricots to be dried from green fruit not then in the possession of, but to be acquired and dried by, the defendants. Such a contract is not an agreement to sell a definite or certain quantity of dried apricots, in which case the terms "estimated," "about," and "more or less" would provide only against immaterial, accidental variations. By their contract defendants agreed to sell and deliver, at an agreed price, "all of the crop of fruit . . . during the current year, on the place known as Beales & Kimball dryer in Los Angeles County." This was not an agreement to sell a definite number of apricots to be dried. It was not an agreement to sell between 75 and 100 tons. It was an agreement to sell the entire "crop," i. e., "output," of defendants' dryer during the current year, whatever that output might prove to be, although it was estimated that it would be somewhere between 75 and 100 tons. This "output" constituted a definite and ascertained stock of dried apricots, as much so as if the agreement to sell had been an agreement to sell all of

the dried apricots in a particular pile, or all of the dried apricots in a particular warehouse. The estimation of the amount that would constitute the output for the current year was not a warranty. Good faith was all that was required of the defendants in making the estimate or in their future operation of the dryer. (*Brawley* v. *United States*, 96 U. S. 168. [24 L. Ed. 622, see, also, Rose's U. S. Notes]; *Inman Bros.* v. *Dudley & D. L. Co.*, 146 Fed. 449 [76 C. C. A. 659]; *Marx* v. *American Malting Co.*, 169 Fed. 582 [95 C. C. A. 80]; *Bautovich* v. *Great Southern L. Co.*, 129 La. 857 [Ann. Cas. 1913B, 848, 56 South. 1026].) Although defendants dried but 6,529 pounds, the complaint is barren of any allegation tending to show that their failure to dry the amount which they estimated would be the output of their plant for the year 1919 was due to any fraud on their part or to any departure from the normal manner of conducting such a business.

The governing principle in this class of cases was enunciated by the federal supreme court in *Brawley* v. *United States, supra,* as follows: ''Where a contract is made to sell or furnish certain goods identified by reference to independent circumstances, such as an entire lot deposited in a certain warehouse, *or all that may be manufactured by the vendor in a certain establishment,* or that may be shipped by his agent or correspondent in certain vessels, and the quantity is named with the qualification of 'about' or 'more or less,' or words of like import, the contract applies to the specific lot; and the naming of the quantity is not regarded as in the nature of a warranty, but only as an estimate of the probable amount, in reference to which good faith is all that is required of the party making it. In such cases, the governing rule is somewhat analogous to that which is applied in the description of lands, where natural boundaries and monuments control courses and distances and estimates of quantity.'' *Guillim* v. *Daniell*, 2 Cromp. M. & R. 61, is in point. In that case the defendant agreed to sell and the plaintiff agreed to purchase all the naphtha which the defendant might make during a period of two years, ''say from one thousand to twelve hundred gallons per month.'' Lord Abinger, construing the contract, said: ''The agreement is simply this, that the plaintiff undertakes to accept all the naphtha that the defendant may happen to

manufacture within the period of two years.   The words 'say from one thousand to twelve hundred gallons [per month]' are not shown to mean that the defendant undertook, at all events, that the quantity manufactured should amount to so much.   If by fraud the defendant manufactured less than he ought to have done, the breach should have been shaped accordingly.   Here, it does not appear that, in the ordinary course of his manufacture, the defendant ought to have produced a larger quantity than he has done; and we cannot, therefore, say that he has broken his contract.''

For the foregoing reasons, we think that plaintiff has failed to prove that defendants breached their contract.

The judgment is affirmed.

Works, J., and Craig, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 16, 1922.

All the Justices concurred.

Lennon, J., was absent and Richards, J., *pro tem.,* was acting.