[Civ. No. 2457. Third Appellate District.—September 27, 1922.]

## G. C. FRANCIS, Respondent, v. A. A. MERKLEY, Appellant.

[1] SALES—PURCHASE OF TRACTOR AND PLOWS — NATURE OF TRANSACTION—EVIDENCE.—In this action to recover the value of a tractor and a set of plows claimed to have been sold by the plaintiff to the defendant, the finding that the purchase was not contingent on a third person doing sufficient work under his contract with the defendant to entitle such third person to a credit for an amount equivalent to the value of the implements is sustained by the evidence.

[2] ID.—DELIVERY TO THIRD PERSON—DIRECTION OF BUYER—EFFECT OF. Where a buyer at the time of executing a memorandum reciting the purchase of farming implements directed delivery to a third person, such delivery was a delivery to the buyer.

[3] ID.—DEMAND OF RETURN OF PROPERTY—NONPAYMENT—CONSTRUCTION OF LETTER.—A letter written by the seller's attorney showing nonpayment and demanding the return of the implements merely amounted to an offer to acquit the buyer of further liability if he would return the property, and not being accepted, did not amount to an election to rescind the contract.

APPEAL from a judgment of the Superior Court of Sacramento County. Peter J. Shields, Judge. Affirmed.

The facts are stated in the opinion of the court.

Arthur C. Huston for Appellant.

J. M. Inman for Respondent.

BURNETT, J.—Plaintiff brought this action to recover the value of a C. L. Best 75 horse-power tractor and one set of John Deere plows, which he claims to have sold to the defendant, and he had judgment for the sum of $1,995, from which judgment the appeal has been taken.

Appellant states that the "appeal is taken upon the following grounds: 1. That the arrangement between plaintiff and defendant and the delivery of the memorandum was contingent on Davenport doing sufficient work under his contract with the defendant to entitle Davenport to a payment of $2,500, the agreed value of the tractor, and that the

·finding of the court to the contrary was against the weight of evidence. 2. That it was conclusively proved at the trial that the tractor was not delivered to the defendant but was delivered to Davenport. 3. That the plaintiff elected to rescind the contract between himself and defendant."

[1] As to the first of these the statement by appellant is sufficient to condemn it. He claims only that the finding is against the weight of evidence, thereby implying that there was substantial evidence to support it. Indeed, in elaborating the point he admits that "the evidence of the plaintiff, standing by itself, justified the court in finding that the memorandum signed by Merkley constituted an agreement by the plaintiff to sell and an agreement by the defendant to purchase, and that it contained the entire arrangement between the parties," but the contention is ·that this is contradicted by Davenport and the defendant. Appellant seems to have forgotten the well-established rule that must govern an appellate court where there is a substantial conflict in the evidence. Nevertheless, to show how utterly baseless is this first ground we may recite the important facts upon which said finding was based. It was admitted by defendant that he executed a written memorandum as follows:

"This is to certify that I have this day sold 1000 sacks of barley to G. C. Francis at $2.50 per sack same to be allowed on the purchase of a C. L. Best (75 h. p.) and set of John Deere plows (10 plows) on basis of $2500 as purchase price of said implements.

"(Signed) A. A. MERKLEY."

The contention of defendant was that the real purchaser was one Davenport, who had entered into a contract with him to do certain land leveling and who did not have the money or machinery to complete the work, or at least that the parties understood and agreed that defendant was not to pay for said machinery until Davenport was entitled to a credit for said amount on account of his work. As to this Davenport testified as follows: "Q. And did you purchase a tractor from Mr. Francis? A. No. Q. Did you purchase this machinery from Mr. Francis at any time? A. I did not. Q. Did you have any conversation with Mr. Merkley in regard to the machinery? What was to become of it, or with relation to it generally? A. I was to do sufficient work

for Mr. Merkley to pay $2,500 for the machinery before I owned the engine. Q. You said nothing in your—in. your talk about selling this. A. Yes. Q. To Mr. Merkley. A. About what? Q. About Mr. Merkley buying the engine from Mr. Francis. A. We talked that. Q. Did Mr. Merkley buy the engine? A. Bought the engine for me to do the work. Q. For you? A. Yes.''

The plaintiff testified as follows: ''Q. You have read this agreement, of course, which I just introduced in evidence? A. Yes, sir. Q. Where was that signed? A. Signed in Mr. Merkley's office. Q. Was there at the signing of this contract, or at any time, any understanding of any kind between you and Mr. Davenport, or between you and Mr. Merkley, in regard to doing of certain work by Mr. Davenport for Mr. Merkley, as a portion of this transaction? A. No, sir; there never was. Q. Did you hear a discussion between Mr. Davenport and Mr. Merkley in reference to the taking of this machinery? A. All the discussion was,—Mr. Davenport was there when the agreement was made out—Mr. Merkley agreed, before Mr. Davenport, to take the engine himself, and deliver me 1,000 sacks of barley for the engine, at $2.50 a sack; I told him to write it out; consequently it was written out. Q. Was there any portion of that conversation relating to doing of work on Mr. Davenport's part? A. Absolutely none—no, sir. Q. So far as any understanding between you and Mr. Merkley is concerned, was it all contained in that agreement? A. Yes, sir.''

From the foregoing it is manifestly true, as stated by respondent, that the court was entirely justified in concluding ''that the intent of all the parties was plain and fully expressed in this written contract'' and the court was fully warranted in declining to write into the contract something that does not appear therein.

[2] Upon the second point it is sufficient to quote the following testimony of plaintiff: ''Q. Where is the engine now? A. So far as I know it is over at Mr. Merkleys. Q. To whom did you deliver the engine? A. At the request of Mr. Merkley, I delivered it to Mr. Davenport. Q. When did Mr. Merkley make that request? A. At the time the agreement was made out. Q. What did he say? A. He said let Mr. Davenport have the engine.''

Of course, under such circumstances, a delivery to Davenport was a delivery to the defendant.

[3] The third contention is based upon the fact that on December 30, 1920, plaintiff's attorney wrote this letter to the defendant: "Inclosed please find copy of memorandum between yourself and G. C. Francis. He tells me that he was unable to secure this barley and he now demands return of the machinery. Kindly let me know what your disposition in the matter is."

In the first place, rescission was not pleaded by the defendant. In fact, his sole claim was that the machinery was purchased by or for Davenport and it was the agreement that it should be paid for by him either directly or indirectly. Moreover, said demand did not amount to a rescission, nor was it a case wherein there was any ground for rescission, unless by consent (Civ. Code, sec. 1689), and defendant refused his consent, stating: "This machinery was moved to my place by W. L. Davenport and should be returned by him." Said demand amounted at most to an offer to acquit defendant of further liability if he would return the property. Since, however, it was not accepted, it created no rights in favor of appellant. In truth there is evidence that the parties thereafter agreed that instead of returning the machinery defendant would deliver the barley according to the written contract. Subsequently he declined to do this and plaintiff properly brought the action for its value.

We discover no merit in the appeal and the judgment is affirmed.

Anderson, J., *pro tem.*, and Finch, P. J., concurred.