[Civ. No. 3171.   Third Appellate District.—December 13, 1926.]

TURLOCK MERCHANTS AND GROWERS, INC. (a Corporation), Appellant, v. J. H. SMITH, Respondent.

[1] SALES—SALE F. O. B. — REJECTION UPON INSPECTION. — When produce is sold for an agreed price f. o. b. a given place, the rise or fall of the market is of no concern to the seller, but upon inspection of the produce prior to the acceptance thereof, the purchaser may reject the same and refuse to pay therefor, if not of the character or quality agreed upon.

[2] ID. — INSPECTION AT POINT OF SHIPMENT — PRESUMPTION. — When produce is sold for an agreed price f. o. b. a given place, it may be presumed, in the absence of anything to show a contrary intention that inspection is to be made at the point of shipment, but the presumption is not conclusive, and it may appear from all the circumstances surrounding the transaction that the parties contemplated an inspection at the point of destination.

[3] ID.—DELIVERY TO COMMON CARRIER—INSPECTION UPON ARRIVAL—REASONABLE TIME.—Where articles are to be delivered to a common carrier by the vendor, to be forwarded to the vendee at a distant point, and no provision is made for inspection and acceptance before or at the time of shipment, the vendee is entitled to a reasonable time, after the goods arrive at their destination,

---

1.   See 22 Cal. Jur. 953; 22 Cal. Jur. 918; 24 R. C. L. 45.

3.   Buyer's right to inspect at destination where goods are delivered to carrier, note, 27 A. L. R. 524.

in which to exercise the right of inspection, and to accept or reject them if they do not comply with the contract.

[4] ID.—INSPECTION AT DESTINATION—TRADE CUSTOM—PRESUMPTION—EVIDENCE.—Where a contract relating to the sale of cantaloupes f. o. b. a given place makes no provision for inspection and acceptance before or at the time of shipment, but there is a trade custom, known to both parties, giving purchasers the right to inspect shipments at the point of destination, it must be presumed, in the absence of covenant or evidence to the contrary, that the parties contracted with reference to that custom and that such custom became a part of the contract; and in an action to recover for cantaloupes so sold, evidence offered for the purpose of proving such custom and the rejection of the cantaloupes at the point of destination should be admitted.

(1) 35 Cyc., p. 225, n. 29, p. 229, n. 55.   (2) 35 Cyc., p. 226, n. 41. (3) 35 Cyc., p. 227, n. 47.   (4) 17 C. J., p. 490, n. 54; 35 Cyc., p. 571, n. 68.

APPEAL from a judgment of the Superior Court of Stanislaus County. J. C. Needham, Judge. Reversed.

The facts are stated in the opinion of the court.

W. N. Graybiel for Appellant.

Samuel V. Cornell for Respondent.

FINCH, P. J.—The complaint alleges that the defendant is indebted to the plaintiff "on an open book account for goods, wares, and merchandise, and money expended for said defendant of the reasonable value" of $637.17. The answer denies the alleged indebtedness. The defendant filed a cross-complaint in which he alleges that the parties entered into an agreement whereby the defendant appointed the plaintiff "his sole and exclusive agent for selling and distributing all cantaloupes owned or controlled by said defendant . . . for the season of 1921," the defendant to pay the plaintiff for such services at the rate of "ten cents for each flat crate and fifteen cents for each standard crate of cantaloupes sold or distributed . . . in pursuance of said contract"; that the plaintiff, under the terms of the contract, sold cantaloupes belonging to defendant "for the total sum of $18,120.58" and has not paid defendant "any part thereof except the sum of $15,492.72," leaving a balance due de-

fendant of $2,627.86. As a second cause of action it is alleged that the plaintiff is indebted to defendant on account of moneys had and received for the benefit of the plaintiff in the sum of $2,627.86. As a third cause of action it is alleged that, in violation of the terms of the contract, the plaintiff sold certain carloads of defendant's cantaloupes "to be delivered at points other than the said town of Denair . . . and has deducted from moneys coming to its hands for the use and benefit of the defendant . . . as the proceeds from the sales of said cantaloupes the total sum of . . . $2,627.86 which said plaintiff . . . claims to have thus . . . expended for transportation charges" on the cantaloupes sold for delivery at points other than Denair. It is apparent that the three counts are but statements in different forms of a single cause of action.

The plaintiff demurred to the cross-complaint on general and special grounds and, upon the overruling of the demurrer, filed its answer to the cross-complaint, denying the allegations of the first and second alleged causes of action. The answer to defendant's third cause of action "denies that plaintiff sold for defendant certain carlods of cantaloupes otherwise than f. o. b. Denair except as requested and directed so to do by said defendant," and denies all other allegations of such third cause of action.

The court found that the parties entered into a contract as alleged and the same is set forth at length in the findings. The contract is substantially in the usual form of agreements between co-operative marketing associations and their members, except as to the following terms, which were inserted at the special request of defendant: "It is further agreed that where grower can load straight cars within hours of one working day he may use Peacock label and all such cars will be sold f. o. b. Denair at grower's request, seller agreeing to sell to best advantage and look after collection from buyer." The court found that the foregoing part of the contract "was intended by the parties to mean and it was their agreement and understanding that all such cars should be sold and delivered to the purchaser at Denair, California, and that none of such cars should be sold for delivery at any other point or place"; that the defendant delivered to the plaintiff certain carloads of cantaloupes to be sold in pursuance of the terms stated; that on the 15th

of November, 1921, the plaintiff delivered to the defendant "an itemized statement covering the business relations" between the parties from the time of the execution of the contract to the delivery of the statement. Then follows an analysis of the itemized statement, the court charging the plaintiff with the difference between the market value of the cantaloupes delivered to the plaintiff and the amount credited to defendant in the statement. The court found that after receiving such statement the defendant "for the first time learned that the foregoing cars had been sold and delivered at a point other than Denair, California, and that the losses under the market value of said cars, as stated upon the sales slip theretofore delivered to him, was occasioned by transportation charges for delivering said cars to the point or place of delivery." The court did not find the amount for which plaintiff actually sold the cantaloupes in question or the amount expended as transportation charges.

The evidence sufficiently shows the market value of the cantaloupes at Denair to be as follows: Car No. 14,618, $404.10; 2369, $384.60; 11,075, $459.85; 6021, $618.90. At the times the cantaloupes were shipped the plaintiff reported to defendant that they had been sold for the foregoing respective amounts. In the itemized statement of November 15, 1921, the plaintiff charged the defendant with net losses on the first three cars as follows: No. 14,618, $74.01; 2369, $633.99; 11,075, $74.95, and credited him with only $347.54 on car No. 6021. The court struck out all charges for losses and expenses and charged plaintiff with the full market value of such cantaloupes and found that plaintiff was indebted to defendant, at the time the statement was rendered, in the sum of $2,436.36 more than the statement indicated.

The evidence shows that the plaintiff charged the defendant with a total of $1,198.15 on account of freight paid by plaintiff, but no other evidence has been discovered which supports the finding that "the losses under the market value of said cars . . . was occasioned by transportation charges." The plaintiff sold the cantaloupes to buyers in distant cities; car 6021 going to Portland, Oregon; 14,618 to De Moines, Iowa; 2369 to Salt Lake City, Utah, and 11,075 to Chicago, Illinois. The general manager of the plaintiff testified that the cantaloupes were "sold f. o. b. Denair. . . . The sales are made by a medium of telegraphic communications. . . .

Then we ship to ourselves, at this buyer's destination, invoicing the buyer and drawing on him for the amount agreed upon and send out the papers through the bank for him to receive and take delivery of the goods. . . . If you sell a car of produce f. o. b. origin, that means that the buyer assumes the freight. . . . I did the very best I could to sell his fruit at Denair. Market conditions and other factors made late sales a hard proposition. A lot of people that made purchases went back on their word later on. Cars were there and it was a perishable product. They were there, refused, and we had to do the best we could with them." What became of the four carloads of cantaloupes after they were shipped from Denair does not appear, except that they were rejected by the purchasers. Plaintiff attempted to prove the grounds upon which they were rejected, but the court sustained defendant's objection to such proof, the objection being that "it is irrelevant and not pertinent to any issue in this case unless they tell it here that that car was rejected at Denair." The only theory upon which the ruling can be upheld is that the contract required unconditional acceptance by the purchaser at Denair and that it was a violation of the contract to sell the cantaloupes f. o. b. Denair, subject to inspection at destination. The special terms in the contract were inserted because the defendant objected to the shipment of his cantaloupes on consignment, the plaintiff's usual method of disposing of produce under its control. [1] When produce is shipped on consignment the owner thereof may sustain a heavy loss because of a falling market, however high the quality of his produce. Whenever it is sold for an agreed price f. o. b. a given place, the rise or fall of the market is of no concern to the seller, but upon inspection of the produce prior to the acceptance thereof, the purchaser may reject the same and refuse to pay therefor, if not of the character or quality agreed upon. (*M. A. Newmark & Co.* v. *Smith,* 26 Cal. App. 339 [146 Pac. 1064].) [2] In the absence of anything to show a contrary intention it may be presumed that in such a case inspection is to be made at the point of shipment, but the presumption is not conclusive, and it may appear from all the circumstances surrounding the transaction that the parties contemplated an inspection at the point of destination. (*Whitaker* v. *Dunlap-Morgan Co.,* 44 Cal.

App. 140 [186 Pac. 181]; *Gianelli* v. *Globe Grain & Milling Co.*, 48 Cal. App. 103, 110 [191 Pac. 720]; *Puritas Coffee etc. Co.* v. *De Martini*, 56 Cal. App. 628, 636 [200 Pac. 96].) It appears from the evidence that the defendant has had several years' experience in raising and shipping cantaloupes, and he is doubtless familiar with the customary methods of selling and shipping them. At the time the contract was executed he probably knew that the local market for cantaloupes was limited and that in order to make advantageous sales it would be necessary to ship the most of them to buyers at distant points, who probably would not have representatives at the small-town of Denair to inspect the shipments. In *Eaton* v. *Blackburn*, 52 Or. 300 [132 Am. St. Rep. 705, 16 Ann. Cas. 1198, 20 L. R. A. (N. S.) 53, 96 Pac. 870], the plaintiff sold the defendant a quantity of hay to be delivered f. o. b. at point of shipment. The court said: [3] "Where articles are to be delivered to a common carrier by the vendor, to be forwarded to the vendee at a distant point, and no provision is made for inspection and acceptance before or at the time of shipment, the vendee is entitled, under the law, to a reasonable time, after the goods arrive at their destination, in which to exercise the right of inspection, and to accept or reject them, if they do not comply with the contract." In *Deveso* v. *Chandler*, 210 App. Div. 684 [206 N. Y. Supp. 604], after stating the rule as above, the court said: "But in any event there was here evidence of a usage, known to both parties, whereby, under the facts involved, payment was to be made after inspection on board cars on their arrival in Buffalo. . . . We think such evidence was admissible." [4] The plaintiff herein attempted to prove a trade custom relative to the place of inspection in the sale and shipment of perishable products, such as cantaloupes, sold f. o. b. point of shipment, but the court sustained the defendant's objections thereto. If there was a custom, known to both parties, giving purchasers the right, under the circumstances stated, to inspect shipments at the point of destination, then it must be presumed, in the absence of covenant or evidence to the contrary, that the parties contracted with reference to that custom and that such custom became a part of the contract. (*Gianelli* v. *Globe Grain & Milling Co.*, *supra*; *Deveso* v. *Chandler*, *supra*.) The court permitted a witness to give his interpre-

tation of the special terms of the contract, correctly stating, however, that the interpretation thereof was for the court, but refused to permit any evidence tending to prove the custom which plaintiff sought to show. The evidence should have been admitted.

The evidence is not such as to require a finding that the parties had reached an agreement as to the balance due on the account between them.

The judgment is reversed.

Thompson, J., *pro tem.*, and Plummer, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 10, 1927.