[Civ. No. 5393. Second Appellate District, Division One.—May 24, 1928.]

WESTERN FOREST PRODUCTS CO. (a Corporation), Respondent, v. WOODHEAD LUMBER COMPANY (a Corporation), Appellant.

Loyd Wright and Charles E. Millikan for Appellant.

Bicksler, Smith & Parke for Respondent.

HAHN, J., *pro tem.*—This action was brought for the recovery of the sum of $1,889.88, less freight charges, claimed by plaintiff as owing from the defendant for a carload of casing lumber shipped by the plaintiff from its mills in Seattle, Washington, to defendant's plant in Los Angeles. The answer admitted the receipt of the carload of lumber in question, totaling 28,571 feet, but claimed that the quality of the lumber was not according to agreement, and that by reason of the inferior character of a portion of the lumber, the entire carload was of the reasonable value of only

$1,298.77.  Judgment, however, went for the plaintiff for the full amount of its claim, and defendant appeals.

It appears that one W. P. Frambes, of the firm of Fletcher & Frambes, who designated himself as a "wholesale commission merchant," took defendant's order for a carload of casing lumber which Frambes represented would be delivered to the defendant by the plaintiff company.  The order provided that the carload was not to exceed 30,000 feet, of which amount not less that ninety per cent was to be of No. 2 casing lumber, and the balance of No. 3 casing.  The price, according to the order, was $66.50 per thousand feet for No. 2 casing, and $51.50 per thousand for No. 3 casing.

Upon the arrival of the car on the siding in defendant's yard in Los Angeles, Davis Woodhead, president of the defendant company, was not satisfied with the character of the casing, concluding that over half of the lot was No. 3, or inferior casing.  He at once called Frambes on the telephone and informed him that he would not accept the lumber because of its inferior quality.  Thereupon Frambes requested him to unload the car, and promised to take the matter up with the plaintiff and secure an adjustment.  Relying upon this promise, the defendant unloaded the car.  The first information respondent had of any dissatisfaction on the part of appellant with the casing was received when Fletcher & Frambes wrote a letter to respondent, the material portion of which reads as follows: "Woodhead Lumber Company has rejected the car of casing shipped him on account of the poor grade of stock and the very poor milling of it.  The writer went out to see this stock this morning and I must say that this is is about as poor a car of finish as I have ever seen.  Knowing that there was no chance to sell this elsewhere, he told them to go ahead and unload this, and that we would see that this matter was adjusted."  Respondent immediately wrote appellant advising it of Frambes' letter informing it of appellant's rejection of the car, and expressed surprise that there was any criticism of the grade of the lumber.  In the somewhat extended correspondence that followed between appellant and respondent, respondent vigorously contended that the lumber was up to grade, and appellant was just as positive that less than half was No. 2 grade.  It was finally agreed that an inspector from the Pacific Lumber Inspection Bureau should make an inspection

of the lumber and report. When the inspector arrived at appellant's plant he discovered that all of the casing lumber, except 5,251 feet, had been milled, or sold by appellant. Hence his report related only to what was left, and that showed 2,318 feet was No. 2, 1,916 feet was No. 3 and 1,017 feet was not classified, but described as lumber that could be trimmed to make No. 2.

Witnesses for the plaintiff who checked and helped load the car at Seattle testified that the lumber put into the car consisted of 27,898 feet of No. 2 casing and 653 feet of No. 3 casing. Witnesses for defendant estimated the amount of No. 2 casing at from thirty to forty per cent of the carload, grading the balance as No. 3. These estimates were based upon a casual survey of part of the lumber, or of the lumber in the car before it was unloaded. None of defendant's witnesses claimed to have made a check of the entire lot of lumber.

In urging a reversal of the judgment, appellant makes three points: First, that the evidence is insufficient to support the finding that the carload of lumber contained 27,898 feet of No. 2 clear casing and 653 feet of No. 3 clear casing. Second, that the evidence is insufficient to support the finding that the defendant did not refuse to accept the carload of lumber, and that no agreement was entered into in relation to the holding of the lumber by the defendant. Third, that the evidence is insufficient to support the finding that the plaintiff did not at any time agree to accept less than the full contract price for the lumber.

■ As we have already indicated, the evidence as to the amount of No. 2 casing and the amount of No. 3 casing is in marked conflict. Appellant attempts to avoid this conflict by urging that the evidence of plaintiff's witnesses on this question is of no weight because it relates to the lumber as and when placed in the car at Seattle, while appellant's testimony related to the lumber as it was unloaded in Los Angeles. There is no merit in this contention. Appellant concedes that there was a total of 28,571 feet of lumber on the car when it arrived in Los Angeles, and this is the amount which respondent claims was loaded into the car at Seattle. To make any differentiation in the weight of the testimony because of the point where the lumber was loaded and checked would necessarily assume that some one had,

while the car was en route, removed a portion of the No. 2 lumber and substituted in its place the exact number of feet of No. 3 lumber. Lacking any evidence to show that the lumber had been changed en route, it must be assumed that the lumber which was taken from the car in Los Angeles was the identical lumber that was loaded into it at Seattle. The evidence upon this issue was clearly conflicting, and inasmuch as there is substantial evidence to support the finding attacked, we cannot disturb it.

As to appellant's contention that the evidence is insufficient to sustain the finding that the defendant did not refuse to accept the carload of lumber, a complete answer is found in the undisputed fact that, notwithstanding its declaration to Frambes that it would not accept the casing, shortly after the lumber was unloaded appellant began to use and sell it and so continued in using and selling the lumber until the time the inspector arrived, when most of the casing had been disposed of. Whatever right appellant reserved when its objection was made to Frambes was waived, so far as acceptance was concerned, by the deliberate appropriation and sale of the lumber.

As to the remaining points urged, appellant's argument is based largely upon the assumption that Frambes was the agent of respondent, with full authority to bind respondent to an agreement to make a proper adjustment of the disputed question of the grade of the lumber. Woodhead, president of appellant, testified that when he told Frambes over the telephone that he would not accept the lumber, Frambes "asked us to unload it and said we would agree on the undergrade of it, and agree to make a proper adjustment." Assuming, for the sake of argument, at this point that this statement of Frambes constituted an agreement of sufficient certainty to enable it to be enforced, it does not appear to be anything more than an agreement on the part of Frambes that he or his firm, together with appellant, would make the adjustment. Frambes does not pretend to say that the respondent would make a proper adjustment, as, indeed, there is no evidence in the record that Frambes was authorized to bind respondent to any such agreement. The extent of Frambes' authority as an agent to sell personal property did not extend to adjusting a claim

for damages that might arise out of a sale made by him. (Sec. 2323, Civ. Code; 9 Cor. Jur., p. 524.)

Nor does the record support appellant's contention that respondent ratified Frambes' agreement to "make a proper adjustment," if that statement or promise can be said to constitute an enforceable agreement. While it appears that Frambes' firm did write respondent, advising it that appellant had rejected the car of casing on account of poor stock, and that Frambes had "told them to go ahead and unload this and that we would see that this matter was adjusted," respondent's only response was to write appellant vigorously contending that the casing was up to grade, and refuting the suggestion that more than half of the carload was No. 3 casing. In fact, Frambes' promise to make a proper adjustment amounted to nothing more than the law gave to appellant, i. e., the right to accept the lumber and claim as an offset in damages the difference between the contract price and the market value of the lumber. Such was undoubtedly the interpretation put upon Frambes' language by appellant as is indicated by the special defense set up in the answer.

Appellants' last point, that the finding that respondent never agreed to accept a sum less than the full contract price for the lumber is not supported by the evidence, cannot be sustained. In the first place, Frambes' so-called promise "to see that the matter would be adjusted," while implying an agreement to compromise, is too indefinite to form the basis of an enforceable agreement; and in the second place, as we have already pointed out, Frambes had no authority to bind respondent to accept less than the order price.

For the reasons indicated, the judgment is affirmed.

Conrey, P. J., and York, J., concurred.