[Civ. No. 6877. First Appellate District, Division One.—October 26, 1929.]

REUEL FORD PRAY et al., Respondents, v. TROWER LUMBER COMPANY, Appellant.

H. W. Hutton for Appellant.

Albert A. Rosenshine and Jacob H. Hoffman for Respondents.

GRAY, J., *pro tem.*—From a judgment based upon a verdict awarding plaintiffs (the sellers) the price of five carloads of lumber, defendant (the buyer) appeals, claiming (1) that, as title to the lumber did not pass, the verdict erroneously awarded the contract price in accordance with section 3310 of the Civil Code instead of the excess of the contract price over either the net proceeds of resale or the value to the seller, as specified in section 3311 of the same code, and (2) that the verdict lacks the certainty or definiteness required by section 626 of the Code of Civil Procedure. The complaint, in the first count, alleges that the parties entered into a written agreement for the sale of ''six carloads of lumber of 6/4 No. 2 pine box rough lumber at the

price of $25 per M feet, f. o. b., car Los Angeles, terms usual"; that "*in accordance with the custom of the lumber business*" and the terms of the agreement, plaintiffs delivered to defendant six carloads of lumber of the quality and quantity and at the times and place specified in the agreement; that plaintiffs have fully performed said agreement and defendant has paid for one carload and refuses to pay for the other five to plaintiffs' damage in the sum of $2,500.59. In the second count, it is alleged that plaintiffs sold and delivered to defendant lumber at an agreed price of $3,002.39, of which defendant has paid $501.80, leaving due and unpaid $2,500.59. The amended answer first denies the agreement in the form pleaded, the delivery of the last five cars, the performance by plaintiffs and the sale at any price in excess of $939.15, of which it has paid $670.15, and offers to pay the balance and then affirmatively pleads an agreement of sale by sample upon other terms, stated in the complaint, the delivery and acceptance of the first carload as a sample, the delivery and acceptance of the second carload, although not equal to sample and the rejection of the last four carloads because not equal to sample. The answer pleads the nonconformity of last four cars to sample only as a complete defense and not by way of counterclaim or rescission. The answer also tendered an issue as to location of the mill from which the lumber was to be shipped, but under the testimony this issue became immaterial.

An examination of the evidence discloses no material conflict except as to the quality of the lumber delivered. Defendant's written order literally, and plaintiff's written acceptance substantially, which together created the agreement between the parties (*Tuso* v. *Green,* 194 Cal. 574 [229 Pac. 327]; *Martyn* v. *Western Pac. Ry. Co.,* 21 Cal. App. 589 [132 Pac. 602]), contained the following pertinent terms: "Ship to J. O. Means, Los Angeles, price $25.00 per M. f. o. b. car Los Angeles. Usual terms five cars 6/4 No. 2 Pine Box Rough. Only one minimum carload to be shipped as sample. If first car is not satisfactory balance of order to be cancelled." The quantity subsequently was increased to six carloads. The figures "6/4" designated the thickness of the individual board (i. e., one and one-half inches thick) and "No. 2" its grade. Six days subse-

quent to date of order J. O. Means received from a box company an order for six to eight cars of 6/4 box lumber rough, subject to acceptance of sample car and on the same day gave an order in the same language, except that it was for five to eight cars, to the defendant. Neither of these last two orders specified "No. 2" grade as did defendant's order to plaintiffs, which omission probably was a cause for the subsequent dispute. To fill defendant's order, plaintiffs ordered from the mills, without mention as to sample, one car and subsequently five cars of 6/4 No. 2 pine box rough. The mills shipped all cars to J. O. Means under bills of lading, naming him as consignee. These bills were mailed by plaintiffs to defendant and forwarded by the latter to J. O. Means, who reconsigned to the box company. The bills were never returned to plaintiffs, but at the trial were in Means' possession.

The first or sample car was accepted by the box company and paid for by the defendant. In its answer defendant offered to pay for the second car, which was finally accepted by the box company after its rejection. The remaining four cars were rejected by the box company on the ground of nonconformity to sample and returned to the carrier, who sold two of them in partial satisfaction of its lien for freight.

The acts and conduct of the parties, with reference to the dispute as to the quality of the last four carloads, is more accurately and completely pictured by their correspondence than it is by their verbal testimony as to conversations, because the correspondence, by its terms, was intended to confirm, summarize and reduce to permanent form those conversations. About one month after the date of its order defendant wrote plaintiffs, complaining that the grade of lumber in the second and later cars was not nearly up to that of the first car, suggesting that this complaint be taken up with the mill and expressing a willingness to amicably adjust the difficulty. The next day plaintiffs replied that they had sold No. 2 grade lumber, that they had advised mill as to the complaint and requested that the latter inspect the lumber and that the most satisfactory way would be to have the "rejects" laid aside and held for official inspection. Defendant, upon the day following, answered, stating that the sale was by sample, requesting

that a representative of the mill call on Means, advising that demurrage was accruing, and that it had asked Means to urge the box company to unload the cars, accept the lumber, which was up to grade, and lay aside the balance for inspection. A week later, plaintiffs wrote that the mill advised that the lumber was of the grade ordered and that it was "up to you to have your customer or yourselves unload this stock and, if dissatisfied, will gladly have same officially inspected by a representative of the California White & Sugar Pine Manufacturers Association." After three days, defendant responded that plaintiffs should examine and compare the first two cars, that it had a just complaint and "we are not responsible for any expense in connection with the refusal of these five carloads and we hope you and your mill folks will not delay any longer the making of an effort to adjust this difficulty."

Although the express language of the agreement does not show their intent as whether it was a present sale or an agreement of sale, yet as a matter of law (*Todd* v. *Lyon*, 55 Cal. App. 67 [202 Pac. 899]; *Turner, Kuhn & Fraser, Inc.,* v. *Jones,* 61 Cal. App. 732 [215 Pac. 1033]), we are satisfied that the parties intended an agreement of sale because the letters "F. O. B." in connection with the place of destination (24 R. C. L. 45) the provision for a sample car (*Wanee* v. *Thomas,* 75 Cal. App. 231 [242 Pac. 509]; *Gardiner* v. *McDonogh,* 147 Cal. 313 [81 Pac. 964]) and the then lack of ownership and possession of the lumber by plaintiffs (*Rosenberg Bros. & Co.* v. *Beales,* 56 Cal. App. 212 [205 Pac. 18]; *Nye & Nisson* v. *Weed Lumber Co.,* 92 Cal. App. 598 [268 Pac. 659]) all indicate an intention to pass title subsequent to the execution of the agreement. "The fundamental difference between a sale, properly so called, and an agreement to sell is, that in the former case title passes, while in the latter case it does not." (*Blackwood* v. *Cutting Packing Co.,* 76 Cal. 212, 215 [9 Am. St. Rep. 199, 18 Pac. 248]; *Rosenberg Bros. & Co.* v. *Beales, supra,* at p. 214 of 56 Cal. App.) If title to the last four carloads vested in the defendant, the measure of damages recoverable by plaintiffs is the contract price. (Civ. Code, sec. 3310.) "Title is transferred by an executory agreement for the sale . . . of personal property only . . . when the seller has completed it, prepared it for de-

livery and offered it to the buyer with intent to transfer title thereto, in the manner prescribed by the chapter upon offer of performance." (Civ. Code, sec. 1141.) ■ Delivery to Means, as specified in the agreement, was delivery to the defendant (*Francis* v. *Merkley,* 59 Cal. App. 196 [210 Pac. 437]). The consignment to Means in the bills of lading and their delivery to the defendant indicate an intent to transfer title to the defendant (Civ. Code, sec. 2130d).

By its objections as to the sufficiency of the evidence to support the verdict and as to instructions given and refused, defendant has clearly presented for decision the question whether a buyer's rejection of goods delivered under an agreement of sale by sample prevents the passage of title, even if the goods so delivered equal the sample as to quality. ■ The plaintiffs having agreed to sell by sample, they warranted that the quality of the lumber in the last four cars would equal that of the sample car (Civ. Code, sec. 1766). ■ The defendant had a right to inspect the last four cars before accepting them (Civ. Code, sec. 1785). The defendant never exercised this right of inspection, but, in its rejection, relied wholly upon the inspection of Means, its buyer, and of the box company, the latter's buyer. There is nothing in the agreement which would expressly or impliedly confer a right of inspection upon the two last-named persons, or which provides that delivery was subject to their inspection. Defendant does not contend that they acted in his behalf. In fact the evidence clearly shows that they were acting on their own behalf, which, because of the difference in the orders as to grade and the adverse relations of buyer and seller, was antagonistic. Because of defendant's utter failure to inspect, the jury was warranted in finding, as its verdict clearly implies that it did, that defendant had waived its right of inspection. ■ Assuming that defendant did inspect the lumber, yet, if, in fact, the quality of the lumber in the last four cars equaled that of the sample car, title would pass, although defendant rejected them (*Brigham* v. *Hibbard,* 28 Or. 386 [43 Pac. 383]; *Weil* v. *Stone,* 33 Ind. App. 112 [104 Am. St. Rep. 243, 69 N. E. 698]; 24 R. C. L. 20; 35 Cyc. 256). The evidence as to the conformity of the last cars to the quality of the sample car was conflicting and

therefore presented a question for the jury's determination. (24 R. C. L. 218; 35 Cyc. 234.) Its determination that the quality of the last four cars equaled that of the sample is amply supported by the testimony of two witnesses for the plaintiff the first of whom testified that, upon inspection at the loading at the mill, he found the quality of all the cars the same (Code Civ. Proc., sec. 1963, par. 32; *Western Forest Products Co.* v. *Woodhead Lumber Co.*, 92 Cal. App. 194 [267 Pac. 901]), and the second of whom testified, that upon inspection after rejection, he found that the quality of the rejected cars equaled the sample.

■ Defendant further complains of the overruling of its special demurrer for uncertainty as to what the custom was or is which is referred to in the allegation that delivery was "in accordance with the custom of the lumber business." Over its objection that such testimony was not within the issues pleaded, plaintiffs were permitted to introduce testimony that it was the custom of the lumber trade, when dispute arose between buyer and seller as to quality of lumber delivered, to decide it by an inspection according to the grading rules of the association, mentioned in the correspondence. "It is not necessary to plead customs or usages of which the court will take judicial notice. Hence the rule that general customs need not be pleaded (citing *Goldsmith* v. *Sawyer*, 46 Cal. 209; *Colman* v. *Clements*, 23 Cal. 245; *Waters* v. *Moss*, 12 Cal. 535 [73 Am. Dec. 561]). Particular customs or usages relating to a particular locality or trade must, however, according to the general rule be pleaded (citing *Swift* v. *Occidental Min. etc. Co.*, 141 Cal. 161 [74 Pac. 700]; *Goldsmith* v. *Sawyer, supra; Dutch Flat Water Co.* v. *Mooney*, 12 Cal. 534)." (17 C. J. 516; to the same effect, 27 R. C. L. 195; 1 Bancroft's Code Pleading, pp. 124 and 455.) "The overruling of a demurrer to a complaint on the ground of uncertainty or ambiguity affords no ground for reversal when it is apparent from the record that the defendant was not thereby misled or embarrassed in making his defense. To warrant a reversal, it must appear that the ruling of the court affects the substantial rights of the demurrant" (2 Cal. Jur. 1014). While the court erred in overruling the demurrer, because the custom related to a particular business, yet a reversal is not warranted because an inspection of the above corre-

spondence and of the first deposition offered by defendant, in which it interrogated its own witness as to such custom and of several other depositions offered by it, in which plaintiffs cross-examined as to such custom, shows that defendant was informed as to such custom and was not misled thereby. ■ Defendant also moved to strike all of the testimony of one plaintiff as to this custom on the ground that he testified he was unfamiliar with the custom at the place of performance. This witness, however, also testified that this custom was general in the business. Of course, the contract was to be interpreted according to the usage of the place of performance. (Civ. Code, sec. 1646.) The error, if any, was cured by the testimony of Butterick, defendant's witness, who, on direct examination, stated this custom existed at Los Angeles. ■ Lastly, it objected to evidence as to this custom on the ground that it attempted to vary the clause—"usual terms"—in the agreement. This clause clearly dealt with the question of credit, that is, the time of payment, and had nothing to do with the manner of inspection upon delivery. "Stipulations which are necessary to make a contract . . . conformable to usage are implied, in respect to matters concerning which the contract manifests no contrary intention." (Civ. Code, sec. 1655.) "It is a general rule that when there is a known usage of the trade, persons carrying on that trade are deemed to have contracted in reference to the usage, unless the contrary appears; that the usage is always admissible to supply a deficiency or as a means of interpretation, where it does not alter or vary the terms of the contract (citing cases)." (*Hind* v. *Oriental Products Co., Inc.*, 195 Cal. 655, 667 [235 Pac. 438, 443].) Under somewhat analogous facts, testimony as to a trade custom of inspection was held admissible in *Turlock Merchants & Growers* v. *Smith*, 80 Cal. App. 263 [251 Pac. 683]. (See, also, *Merehin* v. *Ball*, 68 Cal. 205 [8 Pac. 886].)

■ Defendant seeks a reversal of the judgment, literally following the language of the verdict, which awarded plaintiffs the sum of $2,500.59, "*out of which plaintiff is to pay actual railroad transportation charges as shown by R. R. expense bills but not any demurrage or other charges*" on the ground that the italicized provision renders the verdict too uncertain and indefinite to comply with section 626 of

the Code of Civil Procedure. Defendant having objected to the uncertainty after poll of jury, the court properly should have advised the jury to correct it. (Code Civ. Proc., sec. 619.) But we are satisfied from an examination of the entire record that this error of procedure did not cause a miscarriage of justice (Const., art. VI, sec. 4½; Code Civ. Proc., sec. 475), and that a modification of the judgment in accord with the obvious intent of the jury, will prevent injury to defendant's substantial rights (2 Cal. Jur. 989). No issue was made by either party at the trial as to defendant's right to deduct freight from the price, but the issue tried was as to its liability for the price at all. The verdict therefore was decisive of the only issue presented for the jury's determination (*Hutchinson* v. *Inyo County,* 61 Cal. 119; *Redmond* v. *Weissman,* 77 Cal. 423 [20 Pac. 544]; *Meyer* v. *Parsons,* 129 Cal. 653 [62 Pac. 216]). Obviously, not to deduct the freight would make the defendant pay more than it was obligated to pay under the agreement and would nullify as surplusage the italicized portion of the verdict. The only testimony as to the amount of the freight is given by a witness for defendant on direct examination as $160 per car. The accuracy of this figure is vouched for by defendant's failure to prove the freight bills under its control and unknown to plaintiffs and, also, by the fact that the difference between the gross price, as shown by the bill of particulars, and defendant's offer to pay, contained in its amended answer, shows the freight on the second car amounted to $168.71. The judgment is therefore modified by deducting from the sum of $2,500.59 the sum of $800, being freight on five cars at $160 per car, leaving a balance due under the judgment of $1,700.59.

As modified, the judgment is affirmed, each party to pay own costs.

Knight, Acting P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 25, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 23, 1929.

All the Justices present concurred.