Points Decided.

---

(June 4, 1913.)

## JACOB F. SMITH, Respondent, v. CITY OF REXBURG, Appellant.

[132 Pac. 1153.]

MUNICIPAL LAW—MAINTENANCE OF STREETS—NEGLIGENCE OF CITY—
CONTRIBUTORY NEGLIGENCE—COVERING OF DRAIN DITCHES.

1. A city, town or village opening a street for public travel is not under the necessity of grading and preparing the full width of the street so as to render the same fit for travel, but is vested with a certain discretion in respect to such matters.

2. Where a city lays out and maintains a street 67 feet wide between the sidewalks, and grades and prepares a driveway in the center of the street 30 feet wide, and maintains such driveway in good and safe condition, and covers over a drain ditch crossing such street for the length of 30 feet, being the entire portion of the ditch crossing the graded and traveled part of the street, *held*, that the city is not guilty of negligence for failing to cover such drain ditch throughout its full length or for a greater length than the width of the graded, prepared and traveled portion of the street.

3. Where a teamster was driving an oil wagon drawn by a span of draft horses along a street that was graded, prepared, and which had been traveled for a width of 30 feet, and the street was in no way blocked, and the passage was in no way hindered or obstructed, and such driver failed to observe the end of a bridge or culvert, or boards covering a drain ditch, and allowed his wagon to run off the end of such culvert, and he received injuries thereby, *held*, that he is guilty of negligence and cannot recover.

4. Instructions in this case examined and compared and *held* to be conflicting, inconsistent and confusing.

5. *Held*, that under the facts of this case, there could be no room for the application of the "last clear chance" doctrine as heretofore recognized and announced by this court.

APPEAL from the District Court of the Ninth Judicial District for Fremont County. Hon. James G. Gwinn, Judge.

Action for damages for personal injuries. Judgment for plaintiff. Defendant appealed. *Reversed.*

C. W. Poole and Clark & Budge, for Appellant.

The duty of the municipality is fully discharged when it makes a sufficient width of its highways reasonably safe for travel, taking into consideration the location of the street and the extent to which the same is used. The authorities clearly bear out this statement of the law. (*Herndon v. Salt Lake City*, 34 Utah, 65, 131 Am. St. 827, 95 Pac. 646; *Tasker v. Inhabitants of Farmingdale*, 85 Me. 523, 27 Atl. 464; *Perkins v. Inhabitants of Fayette*, 68 Me. 152, 28 Am. Rep. 84; *Kossman v. City of St. Louis*, 153 Mo. 293, 54 S. W. 513; *Kelley v. City of Fond du Lac*, 31 Wis. 179.)

A person using ordinary care would not be in imminent danger of running off the end of the culvert; in fact, he would be in no danger whatsoever of doing so. (*Village of Mineral City v. Gilbow*, 81 Ohio St. 263, 90 N. E. 800, 25 L. R. A., N. S., 627; *Knowlton v. City of Augusta*, 84 Me. 572, 24 Atl. 1039.)

Instruction No. 15 is clearly erroneous. By it the jury is instructed, in effect, that notwithstanding respondent might in some way have been guilty of contributory negligence, he can nevertheless recover if by ordinary care he could not have avoided the consequences of the defendant's negligence. (*Giffen v. City of Lewiston*, 6 Ida. 231, 55 Pac. 545; *Portneuf Marsh Valley Irr. Co. v. Portneuf Irr. Co.*, 19 Ida. 483, 114 Pac. 19.)

If the instruction was intended to present to the jury the doctrine of the "last clear chance," it would nevertheless be erroneous, because it is alleged by the plaintiff in his complaint that the accident occurred "without any fault on his part," and "solely and entirely by reason of the defendant city failing to exercise due and ordinary diligence and precaution to prevent the same, and solely by reason of the negligence and carelessness of the defendant city," etc. (*Hough v. St. Louis Car Co.*, 146 Mo. App. 58, 123 S. W. 83.)

If the proof shows in a case such as the one under consideration that the plaintiff was guilty of contributory negligence, he cannot recover. (*Rippetoe v. Feely*, 20 Ida. 619, 119 Pac.

465; *Wheeler v. Oregon R. & N. Co.,* 16 Ida. 375, 102 Pac. 347; *Goure v. Storey,* 17 Ida. 352, 105 Pac. 794; *Rumpel v. Oregon Short Line Ry. Co.,* 4 Ida. 13, 35 Pac. 700, 22 L. R. A. 725.)

The mere fact that the place may happen to be dangerous does not change the rule as to the city's duty, though it may be conceded that more would be required to constitute ordinary care with respect to a dangerous place than one not dangerous. A city, however, is bound to the exercise of only ordinary care. (28 Cyc. 1358, 1360; *City of Denver v. Moewes,* 15 Colo. App. 28, 60 Pac. 986; *Leslie v. City of Grand Rapids,* 120 Mich. 28, 78 N. W. 885; *Town of Norman v. Teel,* 12 Okl. 69, 69 Pac. 791; *City of Vicksburg v. Hennessy,* 54 Miss. 391, 28 Am. Rep. 354.)

Soule & Soule, for Respondent.

The evidence on the question of negligence or lack of negligence in this case is conflicting, and the question of negligence or lack of negligence is for the jury. They have passed upon it, and have found that the plaintiff was in the exercise of ordinary care and that the defendant city was negligent. This court has repeatedly held that a verdict, under such circumstances, will not be reversed or set aside. (*Calkins v. Blackwell Lumber Co.,* 23 Ida. 128, 129 Pac. 435; *Maw v. Coast Lumber Co.,* 19 Ida. 396, 114 Pac. 9.)

The correctness of instruction No. 15 will be seen and made plain by a brief reference to some of the decided cases. (*Wheeler v. Oregon R. R. & N. Co., supra; Rippetoe v. Feely, supra; Village of Orleans v. Perry,* 24 Neb. 831, 40 N. W. 417.)

The jury were properly instructed that slight negligence would not prevent recovery, and want of ordinary care would do so. (*Cremer v. Town of Portland,* 36 Wis. 92; *Hammond v. Town of Mukwa,* 40 Wis. 35; *Otis v. Town of Janesville,* 47 Wis. 422, 2 N. W. 785.)

Unless such negligence amounts to want of ordinary care, it will not defeat recovery. (29 Cyc. 511, 512, and cases cited; *Mayor etc. of City of Rome v. Dodd,* 58 Ga. 238;

*Centerville v. Woods,* 57 Ind. 192; *Rowell v. Williams,* 29 Iowa, 210; *St. Paul v. Kuby,* 8 Minn. 154.)

Not only must the negligence of the party injured by another's negligence contribute to the injury to defeat a recovery therefor, but it must contribute as a proximate cause, not as a remote cause or mere condition. (2 Thomp. Neg. 1151; Shearman & Redfield, Neg., sec. 25; Wharton, Neg., sec. 323; *Irwin v. Sprigg,* 6 Gill (Md.), 200, 46 Am. Dec. 667; *Kline v. Central Pac. R. R. Co.,* 37 Cal. 400, 99 Am. Dec. 282.)

The duty of cities to keep their streets in repair "extends not only to the traveled way of streets and alleys, but to adjacent conditions." (*City of Vincennes v. Spees* (Ind. App.), 72 N. E. 531; Elliott, Roads and Streets, sec. 618; *Woods v. Inhabitants of Groton,* 111 Mass. 357.; *Bunch v. Town of Edenton,* 90 N. C. 431; *Boltz v. Town of Sullivan,* 101 Wis. 608, 77 N. W. 870; *City of Delphi v. Lowery,* 74 Ind. 520, 39 Am. Rep. 98.)

AILSHIE, C. J.—This action was instituted to recover damages for personal injury. Verdict was returned and judgment was entered against the city, and this appeal was thereupon prosecuted.

It is contended, first, that the evidence is not sufficient to support the verdict and judgment, and, second, that the court erred in giving certain instructions to the jury. The substantial facts of the case are as follows: The respondent was driving an oil wagon which was drawn by a span of draft horses; he drove northerly along Second East street, in the city of Rexburg, and intended to turn west at the junction of that street with Main street. Immediately after crossing the crosswalk which connects the sidewalks extending along the south side of Main street, the left front wheel ran off the end of a culvert and dropped some 13 inches, and threw respondent from his seat on the wagon and one or both of the wheels ran over him, from which he sustained severe injuries. He has charged the city with negligence in maintaining this culvert.

Second East street is 67 feet between the sidewalks, and 30 feet in the middle of the street was graded and maintained in first-class condition for travel. The city maintained a drain ditch along the south side of Main street for the full length of the street. This ditch is something like eight feet from the crosswalk or eight feet north of the crosswalk which connects the sidewalk running along the south side of Main street. This drain ditch was somewhere from 15 to 24 inches wide and about 13 inches deep. This is the ditch over which the city maintained the culvert. The city had caused substantial boards to be placed lengthwise over this drain ditch for the full width of the 30 feet, extending across the traveled part of Second East street. This covering was lowered into the ground so that the top thereof was covered with earth and the boards could not be seen by one driving along, except as he noticed them at the ends along the sides of the traveled highway. It appears that it had been the habit of persons driving teams east along Main street and turning south on Second East street to turn in on Second East street at the end of this culvert, and so the wagons had worn the ends of the boards and chipped places in them at the ends. White clover and grass and vegetation had grown up along the ditch and about the ends of the boards, so that one coming up Second East street from south to north would not readily notice the end of the boards or that there was a culvert at that place. Respondent was apparently not familiar with this street, and testifies that he did not notice and was not looking for a culvert or anything of the kind. The fact that this accident occurred, however, is convincing evidence that he was driving his team along without noticing just where he was going, and that he was allowing the left wheels of his wagon to run farther to the west along this street about the crossing and near this culvert than was the custom of the traveling public and farther than the regularly traveled bed of the road, as the same was maintained by the city authorities. Had he not done so, he would not have run off the culvert. The fact that he was thrown off his wagon is also evidence that he was not looking or observ-

ing where he was driving. The wagon did not turn over, and had he been exercising ordinary care as a teamster he would certainly not have fallen off his wagon, and, indeed, if he had been observing where he was driving he would not have driven his wagon off the culvert, and so there would have been no occasion for his falling off the wagon. When the wheel went off the end of the culvert it dropped only 13 inches, while the opposite wheel remained on the level track and the wagon did not upset. A careful teamster who was observing where he was driving and what he was doing should have remained on his seat, even though the wheel did make this drop.

It is conceded that a city, town or village opening a street for public travel is not under the necessity of grading such street and preparing it for use and travel the full width thereof. In other words, the city may exercise a reasonable discretion as to the width of the street necessary to be graded and prepared for travel. In the business part of a town or city it will ordinarily be considered necessary to grade and prepare the entire width of the street for public travel and the carrying on of the traffic of the city, while in another part of the city it may not be deemed necessary to grade and prepare more than a sufficient width to enable teams and conveyances to readily pass each other on the grade. (*Herndon v. Salt Lake City,* 34 Utah, 65, 131 Am. St. 827, 95 Pac. 646; *Tasker v. Inhabitants of Farmingdale,* 85 Me. 523, 27 Atl. 464; *Perkins v. Inhabitants of Fayette,* 68 Me. 152, 28 Am. Rep. 84; *Kelly v. Fond du Lac,* 31 Wis. 179; *Kossmann v. City of St. Louis,* 153 Mo. 293, 54 S. W. 513.)

It is also conceded in this case that it was not incumbent upon the city to erect a rail or barrier at the end of this culvert or at the end of the boards over this drain ditch (*Knowlton v. City of Augusta,* 84 Me. 572, 24 Atl. 1039), but it is contended that the city ought to have either extended this covering or have kept the weeds and grass cut down and removed so as to enable one traveling along the street from the south northward to see the end of the culvert and thereby avoid driving off into the ditch. If the city was under the

necessity of extending this covering further to the west, the question would at once arise as to how far it must go. If it was under the necessity of extending it any farther, the same question would arise at any time someone might meet with a like accident, unless the city should extend this covering the full length of the ditch. As for the contention that .it was the duty of the city to cut and remove the grass and weeds so as to enable anyone to see the end of the boards, it is not, in our judgment, well taken. The respondent could see the beaten and traveled way which was a width of 30 feet. He could also see this grass and weeds, and that was notice to him that persons driving along that street had not been using the street farther to the west and that the city had probably not kept it in repair for travel farther to the west than to the weeds and grass. When respondent allowed his team to draw the wagon off the regularly traveled roadway, he was taking his chances the same there as he would be doing anywhere else when he leaves the regular driveway. It would be a dangerous doctrine to adopt in this state to hold that every incorporated town and village must cover irrigation and drain ditches that cross a street to the full width of the street throughout the corporate limits of the town or village. Every city, town and village within the arid portion of this state has these irrigation and drain ditches on numerous streets for the purpose of irrigating trees, lawns, parks and parking, and the municipal authorities must be allowed a certain discretion in determining the extent to which these ditches and drains should be covered and the streets on which they shall be covered the full width and those on which they shall be covered only a part of the width of the street. It would also be burdensome, and we think unreasonable, to hold that the city authorities must keep the weeds and grass cut or mowed down everywhere along these ditches or even at the ends of the coverings or culverts over such ditches. The very presence of a luxuriant growth of weeds and grass in the arid sections of the state is at once notice that unusual moisture is present, and at such a place as we are now considering along a street in a city or town it is sufficient to apprise

anyone who is at all acquainted with conditions that either an irrigation or drain ditch is close by or that, if not, then the ground where such vegetation is growing is wet and soft from seepage or percolation.

Municipal authorities must exercise reasonable care in maintaining the streets in a reasonably safe condition for public travel. (*Carson v. City of Genesee*, 9 Ida. 244, 108 Am. St. 127, 74 Pac. 862; *Eaton v. City of Weiser*, 12 Ida. 544, 118 Am. St. 225, 86 Pac. 541; *Moreton v. Village of St. Anthony*, 9 Ida. 532, 75 Pac. 262.) On the other hand, those who are using such streets must also exercise reasonable diligence and care in the use thereof, and where they fail to do so and contribute to the injury sustained, they should not be allowed to recover. (*Miller v. Village of Mullan*, 17 Ida. 28, 104 Pac. 660, 19 Ann. Cas. 1107.) ·

Appellant has assigned the giving of instruction No. 15 by the court as error, and insists that that instruction was in conflict with instruction No. 10, which was a correct statement of the law. Instructions 10 and 15 are as follows:

Instruction No. 10: "A person using the public highways and streets of a city is bound to the exercise of ordinary care, that is, such care as an ordinarily prudent man would exercise under like conditions; and if he fails to use such care he cannot recover for any damage or injury he may suffer even though the city failed to keep its streets in a reasonably safe condition for travel. If, therefore, you find from the evidence that the plaintiff did not exercise ordinary care in making the turn from County street into Main street across the plank bridge or culvert referred to in the evidence, and his failure to exercise such care proximately contributed to the injury complained of, then you are instructed to find for the defendant."

Instruction No. 15: "The court instructs the jury that the defendant corporation is bound by law to use reasonable care, precaution and supervision to keep its streets and culverts thereon in safe condition for travel in the ordinary modes of traveling, and if it fails to do so it is liable for injuries sustained by one using such street in consequence of such

failure, provided, the party injured is himself exercising reasonable care and caution at the time of the injury, and you are further instructed that the fact that the plaintiff may in some way have contributed to the injury sustained by him will not prevent his recovery *if by ordinary care he could not have* avoided the consequences to him of the defendant's negligence.

"And you are further instructed that though 'plaintiff' may have been guilty of contributory negligence, he may still recover if he could not have avoided the accident and consequent injury by using ordinary care."

It is admitted that instruction No. 10 correctly stated the law, but appellant argues that the latter part of instruction No. 15 was erroneous wherein the court instructed the jury "that the fact that the plaintiff may have in some way contributed to the injury sustained by him will not prevent his recovery if by ordinary care he could not have avoided the consequences to him of the defendant's negligence, and you are further instructed that though plaintiff may have been guilty of contributory negligence he may still recover if he could not have avoided the accident and consequent injury by using ordinary care." We can conceive of a case where this portion of instruction No. 15 might have been a correct statement of the law applicable to the case, but that is not true here. Under the facts and circumstances as they were presented to the jury in this case, the latter part of instruction No. 15 was erroneous, and was contradictory to instruction No. 10 and would tend to confuse the jury. (As holding to same effect, see *Giffen v. City of Lewiston,* 6 Ida. 231, 55 Pac. 545.) To intimate to a jury that a man driving along a level street 30 feet wide with a culvert across the full width of the traveled road or roadbed could not, by the exercise of ordinary care, have avoided driving off the end of the culvert would tend to contradict and discount the facts introduced in evidence. There was no contention whatever that the balance of this street or roadway was occupied or blocked by anything else or that anyone else was occupying any part of the width of this street, or that the respondent did not

have the entire 30 feet in width over which to travel. If he was guilty of negligence in this case, he could not recover. This was a case in which there could be no halfway ground or compromise between the negligence of the party injured and that of the city. If the city was guilty of negligence in maintaining this culvert or covering over the drain ditch, it was liable to the respondent in damages. If, on the other hand, it had discharged its duty in a reasonably prudent and careful manner in the maintenance of this street, the respondent was guilty of negligence in the manner in which he traveled over the street and cannot recover.

Counsel for respondent have invoked the doctrine of the last clear chance and proximate cause, as announced by this court in *Pilmer v. Boise Traction Co.,* 14 Ida. 327, 125 Am. St. 161, 94 Pac. 432, 15 L. R. A., N. S., 254, and *Wheeler v. Oregon R. & N. Co.,* 16 Ida. 395, 102 Pac. 347. That doctrine is not applicable in this case. The respondent had every opportunity to protect himself and prevent this injury. He had a 30-foot roadway, unobstructed, in which to travel. The city was in no way responsible for his wagon going over the end of the culvert. It was not a case where he could not get through the street in any other way or where he was obliged to either turn back and take some other route or drive where he did. The city was in no respect guilty of negligence. While the respondent has suffered an injury, it is that kind of an injury and consequent loss which men frequently sustain and for which they have no one to blame but themselves. Such accidents and misfortunes are always lamentable, and appeal to the sympathies of those who have to deal with them. A municipality, however, cannot be held in damages for an accident or injury unless it can be shown that its officers and agents have been guilty of some negligent or wrongful act for which the law holds the people collectively as a municipality responsible.

In this case, as we view it, it is not a question of conflict of the evidence. There is really no conflict of evidence in the case. The only question to be determined is whether the undisputed evidence in this case shows the city guilty of

negligence, and therefore imposes a legal- liability upon it. It is clear to us that no negligence is shown and no legal liability has attached. ✓

The judgment must be reversed, and it is so ordered, and the cause is remanded with direction to dismiss the action. Costs awarded to appellant.

Sullivan and Stewart, JJ., concur.