(No. 6089. January 25, 1935.)

D. FISCHER, Appellant, v. THE FIRST NATIONAL BANK OF SANDPOINT, IDAHO, Respondent.

[40 Pac. (2d) 625.]

O. J. Bandelin, for Appellant.

E. W. Wheelan, for Respondent.

BUDGE, J.—This action was instituted to recover damages for the alleged refusal of respondent bank to honor and pay a check drawn upon it by appellant. The allegations material to a consideration of the questions involved are contained in paragraphs 3 and 4 of the complaint, which recite as follows:

"That from June 24, 1931, until June 29, 1931, plaintiff had on deposit, subject to his check, in said defendant bank a balance due and owing him of more than One Hundred ($100.00) Dollars. That on June 19, 1931, plaintiff drew his check on his said account with said defendant bank, in the sum of One Hundred ($100.00) Dollars payable to M. Seller & Co., of Portland, Oregon. That said check in the usual course of banking business reached said defend-

ant bank on the 24th day of June 1931, during business hours, but said defendant bank, notwithstanding that it had sufficient funds on hand on that date, belonging to plaintiff wherewith to honor and pay said check, refused to pay said check and returned said check to M. Seller & Co., with the notation that there was not sufficient funds to pay said check on deposit with it belonging to the drawer thereof, to-wit this plaintiff.

"That it was the custom of the defendant bank and other banks in Sandpoint and vicinity to hold checks received from foreign correspondents in the ordinary course of business until the close of business of the day on which they were received before dishonoring them and returning them on account of insufficient funds and that the plaintiff herein knew of this custom and relied thereon. That the defendant and the defendant's officers and agents in violation of said custom and with malice and with intent to injure this plaintiff, dishonored and refused to pay said check upon the day that it was presented and returned the said check to its foreign correspondent. That at the close of business on June 24, 1931, the day upon which the said check was presented, there was on deposit with the defendant sufficient funds to pay the said check as is shown by the books and records of the said defendant bank."

To the complaint respondent filed a demurrer reciting:

"1. That said third amended complaint does not state facts sufficient to constitute a cause of action in that:

"(a) It appears from the complaint that the plaintiff did not have on deposit at the defendant Bank, sufficient funds to pay said check at the time the same was presented for payment."

The demurrer was sustained, appellant refused to further plead, and the action was thereupon dismissed and judgment was entered in favor of respondent, from which judgment this appeal was prosecuted and the following errors were assigned:

"1. The court erred in sustaining the respondent's demurrer to the third amended complaint.

"2. The court erred in dismissing the action."

Appellant seeks to hold respondent liable upon the theory that it was the custom of respondent bank and other banks in Sandpoint and vicinity to hold checks of depositors received from foreign correspondents until the close of business on the day on which received before dishonoring them; that appellant knew and relied upon such custom; and that respondent maliciously violated said custom to appellant's damage. The questions thus presented for determination are: Whether such custom has been sufficiently pleaded, and, whether it can prevail.

As a general proposition every commercial contract, including those in connection with the business of banking, is deemed entered into with the understanding that usage and custom in regard to the particular matter of the contract becomes a part of the transaction itself, unless the contrary appears. (*Luckehe v. First Nat. Bank*, 193 Cal. 184, 223 Pac. 547; 27 R. C. L., sec. 10, p. 162; *Fowler v. Brantly*, 14 Pet. (U. S.) 318, 10 L. ed. 473; 3 R. C. L., sec. 2, p. 376; Morse on Banks and Banking, vol. 1, sec. 243; *Hind v. Oriental Products Co.*, 195 Cal. 655, 235 Pac. 438; *Turlock Merchants & Growers v. Smith*, 80 Cal. App. 263, 251 Pac. 683; *Cherokee Grain Co. v. Elk City Flour Mills Co.*, 78 Okl. 120, 188 Pac. 1067; *Simms v. Sullivan*, 100 Or. 487, 198 Pac. 240, 15 A. L. R. 678; *Waddell v. Tavares*, 126 Or. 610, 268 Pac. 742.)

Custom or usage relating to a particular business, in order to be available for the purpose of determining the rights of parties, must be reasonable, uniform, general as to the place or locality, and not contrary to law. (*Security Com. & Sav. Bank of San Diego v. Southern Trust & Com. Bank*, 74 Cal. App. 734, 241 Pac. 945; *Evans Fuel Co. v. Leyda*, 77 Colo. 356, 236 Pac. 1023; *Rugh v. Soleium*, 92 Or. 329, 180 Pac. 930; *Jones v. Jaycox*, 67 Wash. 403, 121 Pac. 854, Ann. Cas. 1913D, 471, 39 L. R. A., N. S., 1151;

*Luckehe v. First Nat. Bank, supra; Nelson v. Southern Pac. Co.,* 15 Utah, 325, 49 Pac. 644; 7 C. J., sec. 219, p. 587; *Bridgeport Bank v. Dyer,* 19 Conn. 136; *Marrett v. Isaac Brackett,* 60 Me. 524; *Renner v. Bank of Columbia,* 9 Wheat. 581, 6 L. ed. 166.)

With reference to the uniformity and generality, as to the specific place and locality, of the custom, the allegations of the complaint appear to be specific and sufficient. It is alleged that respondent was conducting a general banking business with its principal office and place of business located in the city of Sandpoint, and it is further alleged that the custom relied upon is followed by other banks in Sandpoint and in the vicinity as well as by respondent bank, the complaint alleging that it was the "custom of defendant bank and other banks in Sandpoint and vicinity to hold checks received from foreign correspondents in the ordinary course of business until the close of business on the day on which they were received before dishonoring them and returning them on account of insufficient funds." Respondent cannot be said to be without knowledge of its own alleged custom, if it had such custom, and it is alleged that "plaintiff herein knew of this custom and relied thereon."

The remaining question of whether or not the custom alleged is available for the purpose of determining the rights of parties, or whether it could prevail in the event of proof thereof, may be said to depend upon the reasonableness of such custom and whether or not it is contrary to law. It may be said, in general, that checks are presented for payment to banks in at least two general methods, namely: "Over the counter" and "received from foreign correspondents." It would appear that little difficulty should be encountered in ascertaining the time at which an "over the counter" check is "presented for payment", but the same cannot be said of checks received from foreign correspondents. In effect, appellant alleged that by general custom respondent and other ·banks in Sandpoint and vicinity had fixed the time at which checks received from foreign corre-

spondents would be deemed to have been presented for payment as being the close of the business day during which such checks were received. It appears that there is no specific time fixed by law at which a check received from a foreign correspondent shall be deemed to be "presented for payment," unless it be said that by inference such time is fixed as being the close of the business day during which such checks are received. Section 26–716, I. C. A., part of the Uniform Negotiable Instruments Law, provides that notice of dishonor of instruments within the provisions of such act, which includes a check (I. C. A. sec. 26–1602), must be given as follows:

"Where the person giving and the person to receive notice reside in different places, the notice must be given within the following times:

"1. If sent by mail, it must be deposited in the post-office in time to go by mail the day following the day of dishonor, or if there be no mail at a convenient hour on that day, by the next mail thereafter.

"2. If given otherwise than through the post-office, then within the time that notice would have been received in due course of mail, if it had been deposited in the post-office within the time specified in the last subdivision."

I. C. A., sec. 25–1307, part of the Bank Collection Code, provides:

"Where the item (check, I. C. A. sec. 25–1301) is received by mail by a solvent drawee or payor bank, it shall be deemed paid when the amount is finally charged to the account of the maker or drawer."

I. C. A., sec. 25–1303, of the Bank Collection Code, provides:

"A credit given by a bank for an item (check, I. C. A. sec. 25–1301) drawn on or payable at such bank shall be provisional, subject to revocation at or before the end of the day on which the item is deposited in the event the item is found not payable for any reason. Whenever a credit

is given for an item deposited after banking hours such right of revocation may be exercised during the following business day." ·

In view of the fact that a check or item received from a foreign correspondent may not be altogether capable or susceptible of ascertainment as to the exact time of its presentment for payment, and that there is no statute specifying any such time, and in view of the fact that from the statutes heretofore referred to it would appear that no definite action must be taken by the bank as to such checks until the close of the business day upon which received, and it not appearing that damage would result to the bank by holding the check, it would appear that such a custom as that alleged in the complaint is not contrary to law and is not unreasonable.

It follows from what has been said that the order of the district court sustaining the demurrer and dismissing the action must be reversed and the cause remanded for further proceedings, and it is so ordered.

Costs awarded to appellant.

Givens, C. J., and Morgan and Holden, JJ., concur.

Petition for rehearing denied.