(No. 6951. December 12, 1941)

STATE, Respondent, v. MURL CALKINS, Appellant.

(120 Pac. (2d) 253)

Eugene F. McCann and F. C. Keane, for Appellant.

Bert H. Miller, Attorney General, J. R. Smead, Leo Bresnahan, Robert M. Kerr, Jr., and M. Casady Taylor, Assistant Attorneys General, for Respondent.

HOLDEN, J.—Murl Calkins was informed against and tried in the district court in and for Shoshone County for the crime of murder. His defense was, that at the time of the alleged commission of the crime, he was insane. He was convicted of manslaughter and appeals.

It is strenuously, and we conclude, correctly, insisted the trial court committed reversible error by instructing the jury that

"The law presumes mental capacity and responsibility *unless the fact is proved otherwise by a preponderance of the evidence.* (Italics ours.) If you believe from the evidence that the defendant, at the time that he assaulted Dell Marie Calkins, was laboring under mental aber[r]ation to such an extent that he did not realize or comprehend his acts and was incapable of forming an intent, it is a defense for an act committed while in that condition; but if you find from the evidence that "the defendant knew and realized what he was doing, and was capable of forming an intent, then the defendant will be held responsible for his acts."

By the above quoted instruction the trial court squarely placed upon appellant the burden of proving his defense of insanity by a *preponderance* of the evidence. The law does not impose that burden upon a defendant. Here, as in *State v. Stewart*, 46 Idaho 646, 651, 270 P. 140, the Attorney General admits the instruction is erroneous, but takes the position that, when the instructions are considered as a whole, no prejudice is shown. As this court pointed out in the Stewart case, supra, the fallacy of that position "lies in the fact that the instruction complained of is in conflict with those which are said to render it harmless. It is frequently the case that an instruction which is inaccurate or incomplete may be cured by a correct statement of the law in another instruction, but an instruction which places on the defendant the burden of establishing his innocence *is not cured by an instruction which states the rule correctly*. (Italics ours.) Contradictory instructions tend to confuse and mislead a jury; and, in this case, it is not possible to determine that the jury did not follow the erroneous instruction. How, therefore, can it be said that appellant was not prejudiced? *State v. Judd*, 20 Mont. 420, 51 Pac. 1033; *Weber v. State*, 2 Okl. Cr. 329, 101 Pac. 355; *Rea v. State*, ) Okl. Cr. 269, 105 Pac. 381; *State v. Sandt*, 95 N. J. L. 49, 111 Atl. 651; *Weber v. State*, 183 Wis. 85, 197 N. W. 193. See, also, *State v. Webb*, 6 Ida. 428, 55 Pac. 892; *State v. Bowker*, 40 Ida. 74, 80, 231 Pac. 706." approved and adhered to in *State v. Hines*, 43 Idaho, 713, 718, 254 P. 217; *State v. Copenbarger*, 52 Idaho 441, 463, 16 P. 2d 383.

Respondent did not offer any evidence in opposition to appellant's defense of insanity, but rested its case against him, as to that defense, on the presumption appellant was presumed to be sane. Hence, in passing on that defense the jury was necessarily confined to a consideration of appellant's evidence. That evidence might have been sufficient to raise a reasonable doubt in the minds of the jury as to whether appellant was sane or insane at the time of the alleged commission of the offense, but insufficient to prove that defense by a *preponderance* of the evidence, as the trial court so emphatically instructed the

jury appellant was required to do. Therefore, it is quite impossible for this court to say either that the jury could not have reached any other verdict, or that it would not have reached a different verdict if correctly instructed.

It is also insisted appellant at his preliminary examination was denied the right of counsel, in violation of Sections 19-701 and 19-703, I. C. A., and Section 13 of Article 1 of the Constitution of the State of Idaho. It appears appellant moved in the trial court to set the information aside upon two grounds: (1) That it was "not found, endorsed and presented as prescribed in the Idaho Code Annotated"; (2) that the defendant had not been held to answer to the charge set forth in the information upon a preliminary examination held before it was filed. The motion was supported by the affidavit of appellant. The pertinent allegations of the affidavit are that the committing magistrate advised appellant that he, appellant, "was entitled to a preliminary examination, and that he also was entitled to an attorney; that affiant thereupon advised the said Probate Judge sitting as a committing magistrate that he desired the services of an attorney, but that the said Judge Kelly thereupon advised him that he could not have an attorney at the preliminary examination, but that he would have to wait until said action reached the District Court of the First Judicial District of the State of Idaho, in and for the County of Shoshone, at which time the Court would appoint an attorney for him."

Certain of the proceedings had at the preliminary examination before the probate judge of Shoshone County, sitting as a committing magistrate, are made a part of the record on appeal, from which we excerpt the following:

"Defendant was brought into court and informed of his constitutional rights and after a preliminary hearing, he was bound over to the district court without bond."

Sections 19-701, 19-702, 19-703, I. C. A., provide:

[19-701] "Accused to be informed of charge—Right to counsel.—When the defendant is brought before the magistrate upon an arrest, either with or without warrant, on a charge of having committed a public offense,

the magistrate must immediately inform him of the charge against him, and of his right to the aid of counsel in every stage of the proceedings."

[19-702] "Sending for counsel.—He must also allow the defendant a reasonable time to send for counsel, and postpone the examination for that purpose, and must upon the request of the defendant, require a peace officer to take a message to any counsel in the township or city the defendant may name. The officer must, without delay and without fee, perform that duty."

[19-703] "Examination—When to proceed.—If the defendant requires the aid of counsel, the magistrate must, immediately after the appearance of counsel, or if, after waiting a reasonable time therefor, none appears, proceed to examine the case."

Section 13 of Article I of the Constitution of the State of Idaho provides:

"Guaranties in criminal actions and due process of law.—In all criminal prosecutions, the party accused shall have the right to a speedy and public trial; to have the process of the court to compel the attendance of witnesses in his behalf, and to appear and defend in person and with counsel."

It will be seen the statute requires, in substance: (1) That a committing magistrate must inform a defendant of the charge made against him; (2) that the committing magistrate must inform a defendant of his right to the aid of counsel; and (3) that the magistrate must also allow a defendant a reasonable time to send for counsel; and that Section 13, supra, guarantees to a defendant the right in criminal actions to appear and defend in person and with counsel.

It will be observed appellant does not allege the committing magistrate did not inform him of the offense charged against him nor that the magistrate refused him a reasonable time within which to send for counsel. On the contrary appellant alleges the committing magistrate advised him not only that he was entitled to a preliminary examination but also that he was entitled to an attorney; and the record discloses, as above pointed out, the committing magistrate also informed appellant of

his constitutional rights. Instead of showing he was denied either a statutory or constitutional right it may reasonably be concluded from appellant's affidavit that what happened at the preliminary examination was: That when appellant was brought before the committing magistrate the magistrate informed him he was entitled to a preliminary examination and also to an attorney; that he was not entitled to have an attorney appointed for him at his preliminary examination, "but that he would have to wait until said action reached the District Court of the First Judicial District of the State of Idaho, in and for the County of Shoshone, at which time the Court would appoint an attorney for him."

 Appellant contends the information. is fatally defective in that it is claimed it does not "set out a clear and concise statement of the acts constituting the offense charged in ordinary and concise language and in such a manner as to enable a person of common understanding to know with what particular action or actions he is charged." Omitting the formal parts of the information, it charged that (appellant did)

" . . . make an assault on one Dell Marie Calkins, a human being, inflicting on and in the body of said Dell Marie Calkins mortal wounds . . . and the said Murl Calkins did in the manner and form aforesaid unlawfully, wilfully, feloniously, and with malice aforethought kill and murder the said Dell Marie Calkins."

Appellant demurred to the information upon the ground it did not substantially conform to the requirements of Sections 19-1309, 19-1310 and 19-1311, I. C. A. Appellant assigns error in the overruling of his demurrer by the trial court. It will at once be observed the information does not contain "a statement of the acts constituting the offense" as required by statute. In that respect the information simply and only charges appellant inflicted "on and in the body of said Dell Marie Calkins mortal wounds." It does not charge the manner in which nor the means by which the alleged crime was committed. In *State v. Smith,* 25 Idaho 541, 138 P. 1107 this court held

"A defendant before being placed upon trial for his

life or liberty is entitled to be apprised not only of the name of the offense with which he is charged, but, in general terms, of the manner in which he is charged with having committed the offense. The statute is plain and explicit in this respect."

In the recent well-considered case of *State v. McMahon,* 57 Idaho 240, 249, 65 P. 2d 156, after a painstaking review of the authorities, we expressly and strongly reaffirmed the holding in *State v. Smith, supra.* The information, when tested by the above quoted rule, is fatally defective.

We direct attention to Section 19-1320, I. C. A., providing for the amendment of indictments and informations. If in this or any case the means by and the manner in which a crime was committed are unknown to the prosecutor, then he must so allege in his information.

It is complained the trial court erred in Instruction No. 23, by omitting therefrom the words "by the defendant" after the word "killing." The instruction reads:

"You are instructed that in every case of murder the fact of killing first being proved, all the circumstances of accident, necessity, or infirmity are to be satisfactorily proved by the defendant unless they arrive [arise?] out of the evidence produced against them, for the law presumes the act to be found in malice until the contrary appears."

Section 19-2012, I. C. A., is as follows:

"Murder—Burden of proof in mitigation.—Upon a trial for murder the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof in the case tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable."

It will be noted the statute provides that "upon a trial for murder the commission of the homicide *by the defendant* being proved," etc. (Italics ours.) We think it better practice, to say the least, to use the exact language of the statute in giving an instruction upon the matter of the burden of proof in mitigation of the crime of murder.

The circumstances in some cases might be such as to make it necessary to use the words omitted from the above quoted instruction. *People v. Post* (Supreme Court of California), 281 P. 618.

The judgment is reversed and the cause remanded with directions to grant a new trial.

Morgan and Ailshie, JJ., concur.

BUDGE, C.J., concurring in part, dissenting in part.— The charging part of the information is held in the majority opinion to be fatally defective for the reason that it failed to "set out a clear and concise statement of the acts constituting the offense charged in ordinary and concise language, and in such a manner as to enable a person of common understanding to know with what particular action or actions he is charged." Or in other words, that the information is fatally defective in that it does not allege the manner by or the means in which the alleged crime was committed. It is held that in such circumstances the prosecuting attorney should allege that the means by and the manner in which the crime was committed were unknown to him. The charging part of the information reads as follows:

"That heretofore and on or about the 27th day of April, 1941, in and at the said County of Shoshone, State of Idaho, he, the said Murl Calkins, then and there being, did unlawfully, wilfully and with malice aforethought, feloniously make an assault on one Dell Marie Calkins, a human being, inflicting on and in the body of said Dell Marie Calkins mortal wounds, of which said mortal wounds the said Dell Marie Calkins continuously languished until the 2nd day of May, 1941, in the county of Shoshone, State of Idaho, when she, the said Dell Marie Calkins, died; and the said Murl Calkins did, in the manner and form aforesaid, unlawfully, wilfully, feloniously and with malice aforethought kill and murder the said Dell Marie Calkins."

The majority opinion holds as above stated that the information was insufficient to support a conviction. The views of Justice Givens and the writer, upon the

question of the sufficiency of the information, are fully discussed in *State v. McMahon,* 57 Ida. 240, 259, 65 P. 2d 156, and numerous cases cited therein. No prejudice is shown affecting any substantial right of appellant by reason of the failure on the part of the prosecuting attorney to allege the means by or the manner in which the crime was committed, or that such was unknown to him. The information substantially uses the language of the statute as found in sec. 17-1101, I. C. A., "Murder is the unlawful killing of a human being with malice aforethought." The appellant is charged with "unlawfully, wilfully, feloniously and with malice aforethought kill [killing] and murder [murdering] the said Dell Marie Calkins." The offense of Murder in the charging part of the information is clearly and unequivocally defined.

The following statutes provide:

"No indictment [or information] is insufficient, nor can the trial, judgment, or other proceeding thereon, be affected, by reason of any defect or imperfection in matter of form, which does not tend to the prejudice of a substantial right of the defendant upon its merits." (sec. 19-1319, I. C. A.)

"All the forms of pleadings in criminal actions, and the rules by which the sufficiency of pleadings is to be determined, are those prescribed by this code." (19-1307, I. C. A.)

"Words used in a statute to define a public offense need not be strictly pursued in the indictment; but other words conveying the same meaning may be used." (19-1317, I. C. A.)

"The indictment [or information] must contain:

1. The title of the action, specifying the name of the court to which the indictment [or information] is presented, and the names of the parties.
2. A statement of the acts constituting the offense in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended." (19-1309, I. C. A.)

Section 19-1311, I. C. A., provides that the indictment, or information "must be direct and certain as it regards: 1. The party charged. 2. The offense charged. 3. The particular circumstances of the offense charged, *when they are necessary to constitute a complete offense.*" (Italics ours.)

It cannot to our minds be logically contended that appellant was unable to understand from the language used in the information, and to know, and at all times knew, and did know at the trial, that he was charged with the crime of murder in the unlawful killing with malice aforethought of Dell Marie Calkins, a human being. He knew, furthermore, as is overwhelmingly disclosed by the record, the manner and means used by him to kill and murder Dell Marie Calkins, and during the entire trial he did not claim to be surprised by reason of the character of the evidence offered in support of the information.

Among other facts, it appears that on the evening of April 20, 1941, appellant, deceased, and one Finfrock were together in a room at the Sweet Hotel in Wallace. Some heated words were carried on, neither appellant nor Finfrock disclose just what occurred. Appellant, upon leaving the room in the Sweet Hotel, remained about the city of Wallace until about one o'clock the following morning. He thereupon got in his car and in company with another party drove to Coeur d'Alene where he remained until sometime after lunch that day. At about 5 o'clock in the afternoon, it seems, he returned to Wallace at which time he had become voluntarily intoxicated to such an extent that assistance was necessary in order to remove him from his car. He testified that he was in a state of amnesia, or in other words that he was suffering a loss of memory and had no recollection of events as they occurred from the time he left the Mission Bar, located several miles west of Wallace, until after the occurrence of the offense for which he was tried, or until after he had killed the deceased in the manner and by the means hereinafter referred to.

It further appears that upon his return home on the evening last referred to, he found Finfrock and a Mrs. Costlow in his home. He inquired as to where the chil-

dren were, there being two children born to appellant and deceased, Shirley Ann and Merle Frances, aged 6 years and 4 years respectively, and thereafter he testified that he went into an adjoining room where he lay down on the bed. About 9 o'clock appellant got up and conversed with deceased and Finfrock and Mrs. Costlow. There is testimony to the effect that at this time he threatened the three above named parties with an axe. Finfrock left the house and appellant ordered Mrs. Costlow out of the apartment. According to Mrs. Costlow's testimony appellant locked the door of the apartment. From appellant's brief we summarize the additional information:

"Words ensued between Mrs. Calkins and appellant and Calkins [appellant] unquestionably must have struck his wife. Calkins' [appellant's] testimony from this point on is that he saw his wife lying under a steel bed which was in the room, and that he immediately picked her up and placed her on the bed. He noticed that she had a mark on the right side of her face at about the eye, and that the left side of her face bore evidences of scratches and some injury to her neck. He placed her upon a bed and applied cold packs."

The deceased was continuously unconscious as a result of the wounds inflicted upon her by appellant until her death which occurred on May 2, 1941.

In the apartment at this particular time were appellant, deceased, and their two little children. The six year old child, Shirley Ann, testified that appellant struck her mother, and "stepped on her head" when her mother was on the floor. Mrs. Costlow, among other things, testified that she heard appellant lock the door of the apartment; that she tried to open it; that she heard a scuffle, heard deceased tell appellant to put his knife back in his pocket, heard deceased say she would jump over the bannister if he used the knife on her, heard the children cry and scream and ask him not to kill their mother, heard deceased scream loudly and call the witness, Mrs. Costlow, whereupon the latter called the police; that after the police arrived, she saw deceased lying on the bed with

bruises on her eye, on her head, in back of her left ear, and scratches and bruises on her cheek.

From the above and other facts we think it is clearly established that appellant knocked deceased down with a terrific blow of his fist; that he tramped on her with his feet after he had knocked her down; that the blows so inflicted caused the death of the deceased.

During the short time that deceased lived after being injured she was treated by Dr. Mowery. After her death Dr. Mowery and another physician performed an autopsy. On direct examination, Dr. Mowery was asked and gave answers to the following questions:

"Q. Doctor, in performing this postmortem, what did you find as to the condition there in the brain bag?

"A. We found that the basal artery, or the one coming up in the posterior part of the brain, was all full of clot and was completely closed, and also the blood vessel on the right hand side of the fourth ventricle, wherein all the vital centers of the body are located, was also clotted.

\* \* \* \* \* \* \* \* \*

"Q. What would you say caused that blood clot in the artery?

\* \* \* \* \* \* \* \* \*

"A. Some serious jar to the brain. That is the only thing that could.

\* \* \* \* \* \* \* \* \*

"Q. Would the injury have to be inflicted in the front part of the skull, or would it have to be inflicted in the back part of the skull, to cause this condition?

"A. Well, it could be inflicted either place and cause the same condition in that maybe a quick snap of the head would do it.

"Q. Well, what would you say it was in this particular case, Doctor, then?

"A. That is the only way you could draw the conclusions here, because the injury was there.

"Q. Well, then, in your opinion, what caused the death of Dell Marie Calkins?

"A. The injury to the right orbital region.

"Q. Just where is the right orbital region?

"A. I will put it in plainer English. The right eye region." [Where the evidence shows one of the wounds to have been inflicted.]

From a careful examination of the evidence, the manner and means used by appellant in taking the life of deceased, it is unquestionably established that she died from no other cause or causes than the wounds inflicted upon her body by appellant. The jury found, by its verdict, that deceased came to her death by reason of the blows inflicted upon her body by appellant.

The majority opinion as an additional reason for reversing the judgment, holds that the trial court committed reversible error in giving the following instruction to the jury:

"The law presumes mental capacity and responsibility unless the fact is proved otherwise by a preponderance of the evidence. If you believe from the evidence that the defendant, at the time that he assaulted Dell Marie Calkins, was laboring under mental aber[r]ation to such an extent that he did not realize or comprehend his acts and was incapable of forming an intent, it is a defense for an act committed while in that condition; but if you find from the evidence that the defendant knew and realized what he was doing, and was capable of forming an intent, then the defendant will be held responsible for his acts."

On commenting upon the above instruction it is said: "By the above quoted instruction the trial court *squarely* placed upon appellant the burden of proving his defense of insanity by a *preponderance* of the evidence." In our opinion the above instruction did not refer to insanity as such but to mental capacity and responsibility, and conceding, but not admitting, that the instruction is erroneous, it was cured by later specific instructions repeatedly placing the burden of proof on the State to prove appellant's sanity. This is particularly true when we consider the last sentence in the instruction.

The mental capacity and responsibility of appellant at the time he took the life of decedent was squarely presented to the jury and by its verdict resolved against appellant's contention. Furthermore, the jury found

appellant guilty of manslaughter, wherein no specific intent is necessary as in murder of the first and second degree, which thus further removed the possibility of any prejudice resulting in the instruction considered.

Ordinarily no one instruction can be selected from all of the instructions given, and the meaning of the court fairly ascertained. All of the instructions must be read and considered together. (*State v. Cosler,* 39 Ida. 519, 228 Pac. 277; *State v. Sayko,* 37 Ida. 430, 216 Pac. 1036; *State v. Ramirez,* 33 Ida. 803, 199 Pac. 376; *State v. Petrogalli,* 34 Ida. 232, 200 Pac. 119; *State v. Curtis,* 29 Ida. 724, 161 Pac. 578.) Considering all of the instructions together, given upon the point of appellant's mental capacity, we are clearly of the opinion that it was not only improbable, but also impossible, for the jury to have been misled as to the law regarding appellant's capacity. (*State v. Jurko,* 42 Ida. 319, 331, 245 Pac. 685.)

We concur in the conclusion in that portion of the opinion commencing with the word "It," on page 318 line 5 (referring to proceedings had in the preliminary examination) down to and including line 16, page 321.

If it was intended to reverse the trial court in giving instruction No. 23, we dissent. If it was intended that the judgment should not be reversed for the reason that the trial court gave instruction No. 23, we concur in that portion of the opinion discussing instruction No. 23.

The judgment should have been affirmed.

Givens, J., concurs.