277 P.2d 272

The STATE of Idaho, on relation of Jno. R. McKINNEY, Commissioner of Highways for the State of Idaho, Plaintiff-Appellant, v. Joe RICHARDSON, doing business under the trade name of Riverside Lumber Company, and Harry Sanders, Defendants-Respondents.

No. 7979.

Supreme Court of Idaho.

Nov. 17, 1954.

As Modified on Denial of Petitions for

Rehearing Dec. 20, 1954.

Robert E. Smylie, Atty. Gen., Allan G. Shepard, J. R. Smead, Asst. Attys. Gen., for appellant.

Cox, Ware & Stellmon, Lewiston, Swayne & McNichols, Orofino, for respondent Richardson.

Paul W. Hyatt, Lewiston, for respondent Sanders.

## TAYLOR, Justice.

As a part of its highway system the state owns and maintains a bridge across the Clearwater River at Greer in Clearwater County. The bridge is of steel construction and consists of two spans. Before the damage occurred the one span was 235 feet long and the other 100 feet. The adjoining end of each span rested upon a concrete pier erected in the river channel. On November 10, 1949, the defendant Sanders, an employee of the defendant Joe Richardson, driving a truck upon which was loaded a caterpillar tractor with bulldozer equip-

ment attached, both belonging to Richardson, attempted to cross the river on this bridge. After he had passed over the long span and had entered upon the first half of the short span, the short span collapsed and fell to the river bed. The state cleared away the fallen span, replaced it with a temporary structure to accommodate the traffic in the meantime, and thereafter replaced it with a permanent structure. In September, 1950, the then commissioner of public works, as authorized by statute, § 49-607, I.C., brought this action on behalf of the state to recover the damages sustained. In the complaint it is alleged that the total weight of the truck and load was 51,560 pounds; that at the time the gross load limit fixed by law for the bridge was 30,000 pounds; that a sign was posted on the bridge in compliance with the law, warning the public that the gross load limit of the bridge was 30,000 pounds. The complaint also alleges that the bulldozer was so placed upon the truck, and transported in such manner, that the upright arms of the bulldozer extended to such a height that they contacted a crossbeam of the bridge, causing great shock and strain, as a result of which the bridge was knocked and moved out of place and off its pier. These acts on the part of the defendants in driving on the bridge with a load weight in excess of the posted limit, and permitting the load to come in contact with the cross member of the bridge, are alleged to be acts of negligence and the proximate cause of the injury to the bridge.

The defendants answering separately admit Richardson's ownership of the truck; that it was being operated by Sanders, as an employee of Richardson, and that a portion of the bridge collapsed; and deny generally the negligence alleged by plaintiff. In defense they allege that the collapse was due to negligence of the plaintiff in permitting the pier under the bridge to "become dilapidated, weakened, disintegrated, dangerous, and out of repair"; that the weakened condition of the bridge was the result of negligence on the part of the plaintiff, and was the proximate cause, or a contributing proximate cause, of the collapse of the structure.

The fixing of the weight limit for the bridge appears to have been done under authority of § 49-606, I.C. This section authorizes the commissioner of public works to make regulations reducing permissible sizes, weights, or speeds of vehicles on a "highway or section of state highway" when in his judgment the operation of vehicles of sizes, weights and speeds otherwise permissible will cause damage "or will interfere with the safe and efficient use of such highway by the traveling public". The section further requires the commissioner to "erect and maintain signs designating such regulations at each end of such highway or section". "Highways"

are defined to include bridges. §§ 40-101, 40-402, I.C. (now § 40-107, I.C.).

There is practically no dispute in the evidence that notice of the load limit for this bridge was properly posted. In fact, photographic exhibits introduced by the defendants clearly show the posting over the portal through which defendants' truck entered upon the bridge, and photographs introduced by the plaintiff show the posting over the fallen portal. No witness testified that it was not so posted; the defendant Sanders testified merely that he did not see the sign; that he knew there was a limit on the bridge but did not know what it was. Under the circumstances he is charged with notice of the limitation.

The statutory authority for this action is § 49-607, I.C., as follows:

"Anything to the contrary herein notwithstanding, the owner and the operator, driver or mover of any vehicle, object or contrivance over a public highway or bridge, shall be jointly and severally responsible for all damages which said highway or bridge may sustain as the result of illegally operating or driving or moving such vehicle, object or contrivance, or as the result of driving or moving any vehicle, object or contrivance weighing in excess of the maximum weight specified in this chapter, but authorized by a temporary permit, and the amount of such damages

may be recovered in an action at law by the authorities in control of such highway or bridge." (1953 amendment omitted.)

Section 49-609, of Chapter 6, Title 49, I.C., makes it a misdemeanor to violate any of the provisions of the chapter. In State v. Heitz, 72 Idaho 107, 238 P.2d 439, this court upheld a conviction for the violation of a weight limitation promulgated and posted by the commissioner of public works under authority of § 49-606, I.C. That case places the violation of a lawful regulation, made by the commissioner of public works, on a par with the violation of a regulation made by statute.

It is settled that violation of a statutory inhibition is negligence per se. Brixey v. Craig, 49 Idaho 319, 288 P. 152; Carron v. Guido, 54 Idaho 494, 33 P.2d 345; Hobbs v. Union Pacific R. Co., 62 Idaho 58, 108 P.2d 841; Pittman v. Sather, 68 Idaho 29, 188 P.2d 600; Ineas v. Union Pac. R. Co., 72 Idaho 390, 241 P.2d 1178; 65 C.J.S., Negligence, § 19c.(2).

In some cases such a violation may be justifiable or excusable, but to be justified or excused the violation must arise out of circumstances beyond the control of the violator. The rule is stated in C.J.S., as follows:

"Prudence may sometimes require the doing of an act which would otherwise be in violation of law, and,

even though an act or omission involves a violation of a statute or ordinance, liability may, in some cases, be avoided by showing that under the circumstances of the particular case the violation was justifiable or excusable; but the fact which will excuse a technical violation must result from causes or things beyond the control of the person charged with the violation." 65 C.J.S., Negligence, § 19 h., p. 426.

In Berkovitz v. American River Gravel Co., 191 Cal. 195, 215 P. 675, at page 677, the Supreme Court of California thus stated the rule:

"Violation of an ordinance 'is presumptively an act of negligence and conclusively so until rebutted by evidence that it was justifiable or excusable under the circumstances.' [Citations.]"

And it was held that the defendant driver was excusable if he had checked his rear lamp three or four blocks back shortly before the collision and found it lighted, even though it were not lighted at the time of the collision. Subsequent California cases adhering to the rule are as follows: Leiner v. Eng-Skell Co., 104 Cal. App. 228, 285 P. 905; Gallichotte v. California Mutual, etc., Ass'n, 4 Cal.App.2d 503, 41 P.2d 349; Baldridge v. Cunningham, 31 Cal.App.2d 128, 87 P.2d 369; Kuehn v. Lowthian, 124 Cal.App.2d 867,

269 P.2d 666. The California cases are collected and some of them commented upon by the Supreme Court of that state in Satterlee v. Orange Glenn School District, 29 Cal.2d 581, 177 P.2d 279. In the Gallichotte case, supra, it was held that:

"Burning of grass and weeds on vacant lot in violation of ordinance, resulting in destruction of property on adjoining land, was conclusively presumed negligent, though more than ordinary precaution was exercised in protecting adjoining property before starting fire and in attending fire to prevent spread to other property, where violation of ordinance was deliberate and not result of cause beyond defendants' control." Syl. No. 3, 41 P.2d at page 350.

In a later case, Carlson v. Shewalter, 110 Cal.App.2d 655, 243 P.2d 549, the district court of appeal held:

"The fact which will excuse a statute violation, which would otherwise make violator liable for injuries resulting therefrom, is one resulting from causes or things beyond the control of the violator and mere ignorance of the law is not such a fact." Syl. No. 4, 243 P.2d at page 549.

In Jess v. McNamer, 42 Wash.2d 466, 255 P.2d 902, the violation charged was the failure of the driver to place warning devices upon the highway to warn other drivers of the presence of his stalled truck

thereon. After referring to the general rule, the Supreme Court of Washington said:

"This rule is not applicable in the instant case because here the violation was not due to some cause beyond the violator's control, nor was it a violation against which reasonable prudence could not have guarded. The failure to place warning devices on the roadway was due to appellant's violation of statute and lack of prudence in failing to carry such devices in his truck. The fact that, after appellant negligently created the risk, he exerted every effort to overcome the hazard, does not operate to cleanse the original act of its negligent character." Jess v. McNamer, 42 Wash.2d 466, 255 P.2d 902, at page 904.

▆▆▆ Although the point is not before us, since it may arise upon the new trial, § 1-205, I.C., we will note one of the defenses upon which evidence was offered, and properly rejected by the trial court, to the effect that others had customarily crossed the river on this bridge, with loads weighing more than the fixed limit, some by special permit. Generally custom cannot supersede or abrogate a statute, or justify or excuse its violation, and particularly where the custom conflicts with a penal statute. Mechanics & Metals Nat. Bank of City of New York v. Pingree, 40 Idaho 118, at page 130, 232 P. 5, 8;

Davidson Grocery Co. v. Payette Equity Exchange, 51 Idaho 423, 6 P.2d 149; Fischer v. First Nat. Bank, 55 Idaho 251, 40 P.2d 625; Rowe v. City of Pocatello, 70 Idaho 343, 218 P.2d 695; Langner v. Caviness, 238 Iowa 774, 28 N.W.2d 421, 172 A.L.R. 1135 and annotation page 1141; Cities Service Oil Co. v. Jamison, 189 Okl. 445, 117 P.2d 776; 25 C.J.S., Customs & Usages, § 10b.; 65 C.J.S., Negligence, §§ 16 and 20, p. 427. How a special permit issued to others could avail as a defense, does not appear. Defendants do not contend there was any permit issued for their attempted crossing of the bridge. The effect of such a permit is not before us. §§ 49-605, 49-607, I.C.

The record in this case is therefore conclusive that the act of the defendants in driving the excessive load upon the bridge constituted negligence per se; that such act was not unavoidable or occasioned by circumstances beyond their control; and was not justifiable or excusable.

▆▆▆ It was stipulated that the gross weight of the truck and load was 51,560 pounds and that the distance between the front axle and the rearmost axle of the truck was nineteen feet nine inches. The driving of this vehicle upon the highway and upon the bridge, with that gross weight, was also a violation of § 49-601, I.C., as amended 1949 Laws, Chap. 217. The court properly instructed the jury that such operation of the truck was a viola-

tion of that statute and constituted negligence. (Instruction No. 11.) In instruction No. 35, the court assumed negligence on the part of defendants and advised the jury that it should find for the plaintiff in the absence of contributory negligence. This instruction is correct in assuming negligence on the part of the defendants, but it is erroneous in authorizing a verdict for the plaintiff without proof that such negligence on the part of the defendants was the proximate cause of the injury. It is also erroneous in stating inferentially that negligence on the part of each of the parties may not combine and both be proximate causes, or contributing proximate causes, of the injury. However, by other instructions—Nos. 12, 20, 21, 23, 32, 33 and 34—the court submitted to the jury the issue of negligence on the part of the defendants. Such a conflict in the instructions requires a new trial. State v. Webb, 6 Idaho 428, 55 P. 892; Smith v. City of Rexburg, 24 Idaho 176, 132 P. 1153; State v. Bowker, 40 Idaho 74, 231 P. 706; Draper v. City of Burley, 53 Idaho 530, 26 P.2d 128; Craig v. Village of Meridian, 56 Idaho 220, 52 P.2d 145; State v. Calkins, 63 Idaho 314, 120 P.2d 253; Ossmen v. Commercial Credit Corp., 72 Idaho 355, 241 P.2d 351.

So far as negligence is concerned, the only issues for the jury were, whether the negligence of the defendants was the proximate cause of the collapse of the bridge, and whether there was contributory negligence on the part of the plaintiff. As to the defense of contributory negligence against the state, see 81 C.J.S., States, § 220(a); Annotation 1 A.L.R.2d 827; Howard v. Cook, 59 Idaho 391, 83 P.2d 208.

In view of the new trial, we will consider some of the other issues presented. § 1–205, I.C.

Instruction No. 23, in substance advised the jury that if they found the condition of the bridge was such that it would have collapsed under a load weighing less than the posted limit, and that such condition was the result of negligence on the part of the plaintiff, then the plaintiff was guilty of contributory negligence. This instruction is subject to the criticism that it is a negative and speculative way of presenting the issue. However, even in that form it should be modified by including in the hypothetical state of facts assumed, the negative of the state's contention that the collapse was in part caused by the striking of the cross member.

When the driver, Sanders, was on the witness stand he was permitted to testify that one Phillips, who was riding with him, having looked back as the load entered the first portal of the bridge, said: "Go ahead. There is plenty of Clearance." This was objected to as hearsay and admitted by the court as a "verbal act". The fact sought to be established is that there

was clearance at this portal, to induce the inference that there was also clearance at the portal which collapsed, and that therefore the load did not strike the bridge. The fact asserted was in issue. It is thus apparent that the assertion was neither a "verbal act", an "independently relative statement", nor "res gestae". The objection should have been sustained. Beck v. Dye, 200 Wash. 1, 92 P.2d 1113, 127 A.L.R. 1022; People v. Radley, 68 Cal.App.2d 607, 157 P.2d 426; 31 C.J.S., Evidence, §§ 192, 239; 6 Wigmore on Evidence, §§ 1766, 1772, 1775.

Appellant has assigned the admission in evidence of defendants' exhibits 2–a through 6–b. These are photographs and enlargements of photographs of portions of the fractured areas on the top of the concrete pier where the trusses of the fallen span had rested. These photographs were taken on or about March 17, 1950, some four months after the accident. They are not subject to the objection of remoteness, in view of the showing that the condition of the broken concrete, by weathering or otherwise, had not so changed before they were taken, as to render them valueless or misleading. However, it appears from the photographs that the temporary span had been put in place and its members covered considerable portions of the fractured areas. The exhibits should not have been admitted in the absence of some evidence as to the condition of those parts of the broken areas hidden from view by the temporary span, sufficient to satisfy the trial judge that the photographs would not mislead the jury as to the condition of the areas not shown, or as to the condition of the fractured areas as a whole. For aught that now appears the photographs may show the only parts of the broken concrete which were defective. If this is the fact the jury should be so advised as a condition to the admission of the exhibits.

In rebuttal the state produced the witness Maurice Housecroft, a consulting engineer, with broad background and training in bridge design, construction, maintenance, and repair. He testified that in his opinion the collapse of the bridge could not have occurred in the manner, and from the cause asserted by the defense. Having explained or attempted to explain to the jury the reason for his conclusion, the state proposed to have him prepare a diagram illustrating and explaining his testimony. This offer was rejected on the objection that the drawing was not necessary. We recognize that the admission of such exhibits rests largely in the discretion of the trial court. However, in view of the fact that two drawings had been prepared by two experts who testified in behalf of the defense, and had been admitted in evidence to illustrate their testimony, and the subject of his testimony being technical, it would seem the plaintiff

should have been permitted to introduce a drawing by this highly qualified witness. Cf. Annotation 9 A.L.R.2d 1044.

 Although not assigned, the state urges as error the ruling of the trial court eliminating from consideration of the jury, its claim for damages in the cost of removing the fallen span and erecting the temporary span. The statute, § 49–607, I.C., supra, limits the recoverable damages to "all damages which said highway or bridge may sustain". The liability being statutory, the plaintiff can recover only the damages provided for. No consequential damages to the state being provided for, none can be recovered. The ruling of the trial court was correct. State Highway Commission v. American Mutual Life Ins. Co., 146 Kan. 187, 70 P.2d 20; State Highway Commission v. Stadler, 158 Kan. 289, 148 P.2d 296; State ex rel. Department of Highways v. Rumsey, 205 Okl. 307, 237 P.2d 448; Shell Oil Co. v. Jackson County, Tex.Civ.App., 193 S.W.2d 268; 11 C.J.S., Bridges, § 100.

We find no error in other rulings of the court, assigned by appellant.

The judgment is reversed and a new trial ordered.

Costs to appellant.

Modified on petitions for rehearing, and rehearing denied December 20, 1954."

PORTER, C. J., and GIVENS, THOMAS and KEETON, JJ., concur.